W. M. HAMNER ET AL. *v.* YAZOO DELTA LUMBER COMPANY.

[56 South. 466.]

1. RECOVERY OF LANDS SOLD FOR TAXES. *Limitation of actions. Statutes. Re-enactment. Construction.* Code 1902, section 2735. Rev. Code 1880, section 539.

A tax sale made in 1892 based on the assessment roll of 1889 which was made under the act of 1888 known as the Madison Act, followed by actual occupation and possession for the period prescribed, conferred upon the purchaser at the tax sale a valid title notwithstanding the fact that the act of 1888 has been declared unconstitutional.

2. ANNOTATED CODE OF 1902, SECTION 2735.

Rev. Code 1880, section 539, providing that, "Actual occupation for three years, after two years from the day of sale of land held under a conveyance by a tax collector in pursuance of a sale for taxes, shall bar any suit to recover such land or assail such title because of any defect in the sale of the land for the taxes or any precedent step to sale, etc., etc., is a mere statute of limitation, and possession for the specified period based on a tax sale confers title on the purchaser at such tax sale though the assessment for taxes under which the sale was made was based on an unconstitutional law.

3. LIMITATION OF ACTIONS.  *Statutes.  Construction.*

    Statutes of limitations are statutes of repose, and must be construed liberally in furtherance of the end sought to be obtained.

4. STATUTES.  *Construction.*

    A statute which is plain and unambiguous, clear and free from doubt is its own interpreter, and in such case it is not necessary to resort to any rule of construction to ascertain its meaning. It is not for the judiciary to determine the wisdom, but simply to enforce the statute as it is written.

5. SAME.

    Where there is doubt or obscurity in a statute, one of the cardinal rules of construction is to ascertain, the condition of affairs at the time of its enactment, the evil to be avoided, and the necessary effect produced by the statute.

6. STATUTES.  *Judicial construction.  Re-enactment.*

    The legislature, re-enacting a statute which has been judicially construed by the supreme court, adopts such construction.

7. COLOR OF TITLE.  *Void tax deed—Adverse possession.*

    A tax deed void on its face may notwithstanding be good as color of title on which to found a claim of title by adverse possession.

APPEAL from the chancery court of Sunflower county. HON. E. N. THOMAS, Chancellor.

Suit by the Yazoo Delta Lumber Company against William M. Hamner et al. From a decree for complainant, defendants appeal.

The facts are fully stated in the opinion of the court.

*Tim E. Cooper*, for appellant.

On the 24th of June, 1909, the appellee the Yazoo Delta Lumber Company, exhibited its bill in the chancery court of Sunflower county against the appellants to cancel as a cloud upon its title the claim of title asserted by the appellants. The complainant traced the title, which it is conceded is a good title, unless divested by a tax sale and possession thereunder.

The appellants answered the bill, setting up that the land was sold for taxes due thereon for the year 1891, on the 7th day of March, 1892, and was bought by one N. T. Burroughs, and a conveyance made to him by the tax collector; that Burroughs afterwards sold the land to the Burroughs Land & Trust Company, and that company afterwards sold to Harry A. Dorsey, who sold to the Quiver River Company; and that the Quiver River Company sold to the appellants. The answer avers that, after the period of redemption had expired, Burroughs entered into occupation and possession of the property, and so remained until he conveyed to the Burroughs Land & Trust Company, and that company then entered in possession, and so remained until it conveyed to Dorsey; that Dorsey thereupon entered into possession, and so remained until he conveyed to the Quiver River Company; and that company then entered in possession, and so remained until it sold to the appellants, who thereupon entered into possession, and have so continued.

The appellants pleaded that they and those under whom they claimed have had the actual occupancy for three years after one year from the date of the sale of the lands for taxes, and that they and those under whom they claimed have been in the actual occupation for three years after two years from the date of the sale of land for taxes, under a conveyance by the tax collector in pursuance of a sale for taxes. And the appellants especially pleaded the bar of the statute of Mississippi, to wit, of section 539 of the Code of 1880, and of section 2735 of the Code of 1892.

### THE EVIDENCE.

The case was submitted on an agreed statement of facts found in the record. It was agreed that the complainants were the owners of the land on the 7th day of March, 1892; that on that date the land was sold by the sheriff and tax collector of Sunflower county for the

taxes due, which had not been paid, and thereupon exe-
cuted a deed conveying the land to one N. T. Burroughs,
the purchaser at said tax sale; that the tax deed was filed
with the clerk of the court, and there remained until
after the expiration of one year from the date of said
tax sale; that said land was not redeemed within the
year, and the deed from the tax collector to Burroughs
was duly recorded by the clerk on the 28th of March,
1893; that the tax sale was made under an assessment
under the act of 1888 known as the "Madison Act," and
was in all respects regular and in accordance with the
provisions of the act, and was made for the taxes of
1891; that, shortly after the recordation of the said deed
to him, Burroughs, the purchaser, entered in possession
of the land and had the actual occupancy of the same
for the space of three years after the expiration of one
year from the day it was sold for taxes, and also had
such actual occupation and possession for the space of
three years after the expiration of two years from the
date of the sale for taxes, and said Burroughs entered
upon the land and held possession and occupancy con-
tinuously, claiming title thereto; that after the expira-
tion of five years' occupancy the said N. T. Burroughs
ceased to actually occupy said land, and did not make
any further improvements thereon, nor erect any build-
ings or fences, and that neither he nor those claiming
title through him have ever occupied the same, or erected
buildings or fences thereon, after Burroughs ceased to
occupy the land, but only the following acts were done
in regard to the said land: He sold large quantities of
timber therefrom, aggregating about two hundred thou-
sand feet, during the year 1897-1898, which timber was
cut and hauled off the land. In August, 1899, he con-
veyed by a deed with a warranty of title to Allen & Co.
all the remaining timber thereon, which deed was duly
recorded in the chancery clerk's office in said county; but
thereafter, and during the time he was claiming to be

the owner of the land, up to and including the year 1904, he applied to the complainant through its president, A. E. Randle, from time to time for a quitclaim deed to the land and made every effort to secure the same. That he and his son made several trips to Washington city and to Philadelphia to see the president of the complainant company, and wrote letters from time to time, and submitted deeds to the company, which it refused to sign. That at one time he agreed to buy all the lands of the Yazoo Delta Lumber Company in Sunflower county. The agreement is that the conveyances were made as set out in the appellants' answer and duly recorded, that the said N. T. Burroughs and those claiming under him have annually paid the taxes on said land from the year 1892 down to the present, and that complainant had not, during that time, paid any taxes on said land, and had done no other act of ownership regarding the land than claiming to be the owner thereof, until the filing of this suit. The agreement of facts contains further statements as to the amount of taxes paid by Burroughs and those claiming under him.

### DECREE IN THE COURT BELOW.

On the pleadings and agreements of facts above stated, the chancellor held that the defendants' title was void, and decreed the same to be canceled. He then rendered a decree fixing a lien upon the land for the amount of taxes paid by the defendants and those under whom they claimed.

From that decree the appellants appeal, and the appellee prosecutes a cross-appeal.

### ASSIGNMENT OF ERROR.

Come the appellants and assign for error:

First. The court erred in holding and deciding that the appellee was the owner of the lands described in the bill.

Second. The court erred in holding and deciding that the appellants were not the owners of the lands described in the bill.

Third. The court erred in holding and deciding that the appellants' title to the lands in controversy was not protected by the statute of limitations of three years.

Fourth. The court erred in granting appellee relief.

BRIEF.

I begin the discussion of this case by the admission that there are several decisions of this court which directly and undoubtedly support the decree of the chancellor, in which there is necessarily involved the decision that, because the tax sale under which the appellants derive title was void, the title is not protected under the short statutes of limitation prescribed by Code of 1880, section 539, and Code of 1892, section 2735. Notably among these decisions are: *Kennedy* v. *Sanders*, 90 Miss. 524, 43 South. 913; *Eastland* v. *Lumber Company*, 90 Miss. 330, 43 South. 956; *McLemore* v. *Anderson*, 92 Miss. 42, 43 South. 878, 47 South. 801.

If these decisions are to be adhered to, and if the rights of the appellants are not to be upheld, because they were secured at a time when, under the settled decisions of this court, these statutes applied in all classes of cases in which the occupant claimed under a tax title, we admit that the decree of the court below must be affirmed.

This appeal is brought for the purpose and in the hope of getting this court to overrule these cases and to adopt the principle laid down in the still later case of *Jordan* v. *Bobbitt*, 91 Miss. 1. In the latter case, a majority of this court, after extended argument and mature consideration, adopted the view that a short statute of limitations prescribed for a particular class of cases, to wit, sales by administrators and guardians, operated to protect the title, although the sale itself was void and

conferred no title. The conflict between the cases of *Eastland* v. *Lumber Company, Kennedy* v. *Sanders,* and *McLemore* v. *Anderson* on the one side, and *Jordan* v. *Bobbitt,* on the other, is clear and irreconcilable. The only question is which of the two inconsistent rules announced in these cases will be accepted by this court.

I think it will aid the court in the consideration of the present case to make a short statement in reference to the statutes of this state passed for the protection of purchasers at tax sales and the decisions of this court in their construction. The statutes themselves are of two classes: First. Those in which, without reference to the fact of possession by the purchaser at the tax sale, the title was intended to be protected by the mere lapse of time. Second. The statute by which actual possession by the purchaser for a period of three years, beginning more than two years after the date of the tax sale, protected the title of the purchaser as against all persons *sui juris*.

The statutes of the first class may again be divided into two classes: First. Those in which the protective provision was a part of the law at the time of the sale for taxes and operated prospectively only. Second. Cases in which the protective statute was not a part of the law under which the tax sale was made, but was passed subsequent to the tax sale and was retrospective in its nature.

The first of the statutes of the first class is found in the act of February 10, 1860 (Acts 1859-60, p. 213, section 7). By that act it was provided "that all sales of land, hereafter made for non-payment of taxes due under any law of this state, shall be valid to all intents and purposes, . . . said land subject to redemption as provided by law, . . . and that no such sale shall be impeached or questioned in any manner or for any cause saving fraud or mistake in the assessment or the sale of the same, or upon the proof that the taxes for which

the same were sold had been paid prior to such sale, and no suit to set aside any title acquired under such sale hereafter to be made, shall be brought, unless within five years from the date of sale.".

By Code of 1871, section 1709, it was provided that "no suit shall be commenced in any court of this state to invalidate any tax titles to lands after three years from the time said land was sold for taxes."

The court will note that neither under the act of 1860 nor under the Code of 1871 was it at all material whether the original owner of the land remained in possession, or whether that possession was disturbed by the entry of the purchaser at the tax sale. The limitation prescribed, of five years under the act of 1860, and of three years under the Code of 1871, began to run at the date of the sale for taxes.

In the consideration of all of these statutes, there are two underlying questions which are involved: First, of the legislature power to pass the statute; second, of the legislative purpose disclosed by the statute. The constitutionality of the act of 1860 was assailed in the case of *Griffin* v. *Dogan*, 48 Miss. 11. It was held in that case that the act of 1860 was constitutional, and it was further held that the act gave to the title *prima facie* validity, subject, however, to be defeated for "fraud or mistake in the assessment or sale or payment of the taxes;" the court saying: "The words, 'no such sale shall be impeached or questioned for any cause, saving,' etc., imply that the enumerated causes of impeachment and question must be adduced by defendant."

The act of 1860 was again brought under review in the case of *Sigman* v. *Lundy*, 66 Miss. 522, 6 South. 245. It was there held that the substance of the first six sections of the act of 1860 was embodied in section 1775 of the Code of 1871, and that section 7 of the act of 1860 became a part of section 1709 of the Code of 1871. In *Sigman* v. *Lundy*, it was also held that the act of 1860 applied as

well to sales for levee taxes as to the ordinary *ad valorem* tax sale; the court saying: "The act was to provide for the better security of tax titles. It afforded a remedy by which the holder under any tax title might call to court all persons claiming or having any interest in such lands, which existed at the time the lands were sold for taxes, and settle once for always the validity of his title. As to sales thereafter to be made, it added the assurance that after the lapse of five years no hostile claim should be asserted. Whether the purchaser at tax sale or the former owner was in possession of the land sold, whether the land was occupied or vacant, the security afforded by the act existed. The provision as to future sales was intended to be, and was, an irrevocable and irrepealable stipulation that after the lapse of time named no assailment of the title should be made. It was, and was intended to be, a part of the contract into which the purchaser would enter an inherent, continuing element of right secured, running with the land and a perpetual security of the title.

In *Nevin v. Bailey,* 62 Miss. 433, section 1709 of the Code of 1871 was under construction, and it was there held that this provision was a prospective curative act, intended after the lapse of the period named to cut off all inquiry as to the character of the sale as being defective or irregular in any respect. It was there held that a sale made on a day different from that named in the statute was protected; that if the assessment roll was examined and approved by the board of supervisors at a time not authorized by law, it did not avoid the sale; and that no failure to conform to any legislative requirement would affect the title.

In *Gibson v. Berry,* 66 Miss. 515, 6 South. 325, and in *Jonas* v. *Flanniken,* 69 Miss. 577, 11 South. 319, the statute was again under consideration, and it was again held that its effect was to cure all irregularities in the sale, and that a repeal of the statute subsequent to the

sale for taxes did not affect the right of the purchaser at the sale.

In *Metcalfe* v. *Perry,* 66 Miss. 68, 5 South. 232, it was held that the statute was not intended to apply, and did not apply, to cases in which the taxes had actually been paid before the sale.

In *Vaughan* v. *Swayzie,* 56 Miss. 704, the assessor had failed to return his roll at the time prescribed by law, which failure made, void a sale for taxes. *Weir* v. *Kitchens,* 52 Miss. 74. On the 21st of February, 1873, the legislature passed a special act (Acts 1873, chapter 132) validating the assessment roll, and thereafter, in May, 1873, the land was sold for taxes. It was held that, since this amendatory act was passed while the proceedings for the collection of taxes were *in fieri,* the act was constitutional and the sale a valid sale.

We think these are all of the decisions of the court to which it is necessary to refer, relating to the act of 1860 and the Code of 1871.

In *Kennedy* v. *Saunders,* 90 Miss. 524, 43 South. 913, the case of *Dingey* v. *Paxton,* 60 Miss. 1038, is relied on. *Dingey* v. *Paxton* rests upon a totally different principle than that involved in the case of *Kennedy* v. *Sanders.* The statute under construction in the case of *Dingley* v. *Paxton* was not a part of the law under which the void tax sale had been made. It was passed years afterwards, and provided that no suit should thereafter be brought to assail any conveyance made by the auditor of lands which had been sold to the state for taxes, unless brought within one year from the date of the auditor's deeds. It was held by the court that because this statute was retroactive in its operations, relating to lands which had been theretofore sold for taxes, it was unconstitutional. The same judge who delivered the opinion of the court in *Dingey* v. *Paxton* had also delivered the opinion of the court reported in the same volume, in the case of *Cochran* v. *Baker,* 60 Miss. 282. Speaking of the act under consid-

eration in the last case, he said, for the court: "It cannot be denied that, for the purpose of making a future sale, the legislature could by special act have cured all errors and irregularities in the assessment of the lands and the levy of the taxes, arising from the nonperformance or irregular performance of any act which it might constitutionally dispense with for the future."

The statute under consideration in *Dingey* v. *Paxton* was condemned, because it was a retrospective statute, and not a part of the law under which the tax sale had been made. It is unnecessary we think, to dwell upon the clear and palpable distinction. How it was ever thought that the decision in *Dingey* v. *Paxton*, dealing with a retroactive statute, could lend any support to the decision in *Kennedy* v. *Sanders, Eastland* v. *Lumber Company*, and *McLemore* v. *Anderson*, we cannot perceive.

The present appeal does not involve directly a construction of the act of 1860 and section 1709 of the Code of 1871. The act of 1860 was repealed by the Code of 1871; and the provision of the Code of 1871 was in turn repealed by the act of 1876. Since that time our statutes in protection of tax titles prescribed a short period of limitation, and actual occupancy or possession is required. The tax sale involved in the instant case was made in March, 1892, and the provisions of the Code of 1880 and 1892 are relied on for the protection of the title.

We have called the attention of the court to the act of 1860 and section 1709 of the Code of 1871, because they relate to the same subject, and because, in the recent case of *Seals* v. *Perkins*, 96 Miss. 704, 51 South. 806, 52 South. 584, in the opinion written by Judge Whitfield, he adopted the same rule in the construction of these two acts that had been declared in the cases of *Kennedy* v. *Sanders, Eastland* v. *Lumber Company*, and *McLemore* v. *Anderson, viz.*, that where the tax sale was void no statute of limitation could protect the purchaser.

In the case of *Seals* v. *Perkins,* Judges Mayes and Smith, while concurring in the result reached, announced that they did not concur in the reasons given for the conclusion reached by Judge Whitfield. In other words, as we understand, Judges Mayes and Smith agreed that the decree in *Seals* v. *Perkins* should be affirmed, but agreed to nothing else. As will be seen by reading the facts of that case, it was wholly unnecessary to declare that the protection provided by the act of 1860 and by the Code of 1871 did not exist where the sale was void.

Judge Whitfield, while on the bench, was consistent in the views entertained by him in regard to tax sales. He stuck consistently to the propositions that tax sales were *in invitum,* that a failure in any respect on the part of the officers charged with the duty of making assessments and sales of land for taxes avoided the sale, and that where a sale was void none of the curative statutes and none of the statutes of limitation had application. He carried this conviction into the discussion of the case of *Jordan* v. *Bobbitt,* 91 Miss. 1, 45 South. 311, which, as we have said, involved the construction of the one-year statute of limitation prescribed by Code of 1871, section 2173. This statute has been extended to two years in the subsequent Codes. Code of 1880, section 2693; Code of 1892, section 2760; Code of 1906, section 3122.

We shall, in another part of this brief, extract largely from the opinion of the judges who composed the majority of the court, and also from the dissenting opinion of Judge Whitfield, and we shall attempt to show that precisely the same rules and principles which were applied by the majority opinion must also be applied in cases involving void tax sales.

We come now to the consideration of the statutes found in Code of 1880, section 539, and Code of 1892, section 2735, which declared that possession for three years after two years from the date of a sale for taxes shall protect the title as against all assailment because

of any defect in the sale of the land for taxes, or in any precedent step to the sale.

The court will note this material difference between these provisions of the two Codes of 1880 and 1892 and the provisions of the act of 1860 and of section 1709 of the Code of 1871. The Codes of 1880 and of 1892 required actual possession of the land by the purchaser at the tax sale. The act of 1860 and the Code of 1871 had no reference to possession, and their provisions applied as well where the former owner remained in possession as where possession had been taken by the purchaser at the tax sale.

The decisions upon the provisions of the Codes of 1880 and 1892 were as follows:

*McGee* v. *Holmes,* 63 Miss. 50 (1885): That the statute did not apply where the purchaser at tax sale stood in a fiduciary relation to the owner and would have been disabled to buy at a perfectly regular tax sale.

*Pipes* v. *Farrar,* 64 Miss. 514, 1 South. 740 (1886): That it did apply when the purchaser claimed under a conveyance from the auditor transferring the state's title acquired at a tax sale.

*Clay* v. *Moore,* 65 Miss. 81, 3 South. 142 (1887): That the statute was not applicable where there was "no evidence that the land is held immediately or remotely under a conveyance by a tax collector."

*Lewis* v. *Seibles,* 65 Miss. 251, 3 South. 652, 7 Am. St. Rep. 649 (1887): That the statute did not apply, except where the title was assailed because of some defect in the sale of the land for taxes, and where both parties claimed to have acquired that title, and both therefore asserted its validity, the statute did not apply.

*Patterson* v. *Durfey,* 68 Miss. 779, 9 South. 354 (1891): The complainants, devisees of the original owner filed their bill to cancel as a cloud upon their title the claim of title asserted by the defendants. They averred that the defendants claimed under tax sales, which were

averred to be void: As to a part of the land, because the taxes for which they were sold had been before the sale paid; as to the remainder, because at the date of the sale they were assessed to the liquidating levee board, and by the act creating that board the lands owned by it were not salable for state or county taxes. The defense interposed was possession for three years, as provided by section 539 of the Code of 1880. It was held that, conceding the facts to be as stated by complainants, those who were adults were barred by the possession of the defendants.

*Carlisle* v. *Yoder*, 69 Miss. 384, 12 South. 255: The defendant, claiming under a sale for taxes, had been in possession for more than the statutory period. His title was assailed on the ground, first, that the assessment roll under which the sale was made had not been returned by the assessor at the time prescribed by law; second, that the sale was for taxes for the year 1881, at which time the lands were owned by the liquidating levee board, and were exempt by law from taxation. It is to be noted that under the thirteenth section of the act creating the liquidating levee board (Laws Called Sess. 1866-67, chapter 173), the lands acquired by that board, or which had been acquired by the general board of levee commissioners (under Acts of 1858, chapter 1), were exempt "from state taxation for levee purposes or otherwise," until the same should be sold. There was no exemption as to county taxes.

An exemption from state taxes does not relieve the beneficiary from taxation for county purposes. *Pacific R. R. Co.* v. *Cass County*, 53 Mo. 22; *Martin* v. *City of Charleston*, 13 Rich. Eq. (S. C.) 50; *Covington Gaslight Co.* v. *Covington*, 92 Ky. 312, 17 S. W. 808; *St. Joseph* v. *Hannibal, etc. R. R. Co.*, 39 Mo. 476; *Livingston Co.* v. *Railroad Co.*, 60 Mo. 516; *State* v. *Hannibal R. R. Co.*, 101 Mo. 120, 13 S. W. 406.

So, also, an exemption from taxes for "county, city, borough, county road, school, and poor purposes does not

exempt from state taxes." *Presbyterian Church* v. *Gratz,* 8 Pa. Co. Ct. R. 47; 12 Am. and Eng. Ency. Law, 310.

The sale of the property for state taxes, as well as for county and school taxes, of course rendered the sale void, as did the failure of the assessor to return his roll at the time required by law; but it was held that possession for three years protected the title from being assailed.

All the decisions cited construing section 539 of the Code of 1880, were rendered by the court prior to the year 1892. In the Code of 1892 (section 2735) the statute was re-enacted unchanged, except that the three years' possession was required to begin two years after the sale for taxes, instead of one year. This because under the Code of 1880 one year was allowed for redemption, while by the Code of 1892, two years were allowed.

*Brougher* v. *Stone,* 72 Miss. 647, 17 South. 509, though decided in the year 1895, after the adoption of the Code of 1892, arose under a tax sale made in the year 1881. In that case there were two separate lots involved, lots 5 and 11, of section 35. Both lots were conveyed in one deed by the auditor, and the purchaser went in possession of lot 5, and remained in possession for more than three years. These lots had been sold in May, 1875, for the unpaid levee taxes for the year 1874. The sale for the taxes of 1874 should have been made in March. The sales in May, 1875, were sales under what is known as the "Abatement Act" (Laws 1875, chap. 2). The lands were therefore sold under a law not applicable; that is, they were sold under the abatement act, when they should have been sold for the current year's taxes in March.

The court will observe that this is precisely the condition of things shown in the case of *Kennedy* v. *Sanders,* 90 Miss. 524, 43 South. 913. Judge Woods, delivering the opinion of the court in *Brougher* v. *Stone,* said: "Conceding the utter invalidity of such sale, it is nevertheless true that the lands were salable—subject to sale

—because of the delinquency of the owners in nonpayment of taxes due thereon, and there was an actual sale to the state by the proper officer, but on the wrong day, and under a law not applicable to these lands. Six years later the appellee purchased from the state and obtained the auditor's deed, which was promptly put on record in the proper county, and from that time until the trial was had the appellee, has paid all taxes on the lands. It is agreed, we have seen, that under his auditor's deed of 1881 the appellee had been in the adverse possession and in actual occupation of lot 5 for more than three years next before the commencement of the suit. His title to lot 5 has become unassailable under section 539 of the Code of 1880. It will be remembered that lot 11 was conveyed with lot 5 in the same deed from the auditor. The two lots are contiguous, and it follows that appellee's possession of lot 5 carried with it as a legal consequence possession of lot 11 also, and the appellee was therefore entitled to a decree in his favor as to both of these lots.''

In no case brought before this court before the decision in *Hoskins* v. *Railroad Co.*, 78 Miss. 768, 29 South. 518, 84 Am. St. Rep. 644, where the purchaser claimed under a tax sale and might have relied upon a title derived at a valid sale for taxes, was the protection of the statute denied. Whatever objection was made to the sale for taxes, even though, as in *Patterson* v. *Durfey*, it was shown that the taxes for which the sale was made had actually been paid, the court replied that the security of the title rested, not upon the tax sale, but upon the possession claiming under such tax sale for the period prescribed by the statute.

There is no more controlling rule for the construction of statutes than that where the statute has been construed by the highest court of the state and is afterwards re-enacted, it is conclusively presumed that the legislature intended to re-enact it as interpreted by its courts,

and that this court will consider itself bound by such construction. It is unnecessary to go into the examination of this question or the principle upon which it rests. It is a most conservative rule, and one rarely, if ever, departed from. *Shotwell* v. *Covington,* 69 Miss. 735, 12 South. 260; *Wetherbee* v. *Roots,* 72 Miss. 355, 16th South. 902.

Until the decision in the case of *Eastland* v. *Lumber Company,* 90 Miss. 335, 43 South. 956, the decisions to which we have referred stood undisturbed and unchallenged. They were considered by the profession as having established a rule of property, and innumerable transactions had taken place in reliance upon them.

We will now take up chronologically the decisions of this court made since the case of *Brougher* v. *Stone* was decided, and examine them separately:

In *Hawkins* v. *Mangum,* 78 Miss. 97, 28 South. 872, the question presented was the constitutionality of the act of 1888, commonly known as the "Madison Act." The single question involved in that case was the validity of a sale for taxes made under that act. No question of adverse possession under the Code of 1880, or under the Code of 1892, was presented. There is not a suggestion anywhere in brief of counsel, nor in the opinion of the court, as to adverse possession. The Madison act was, in that opinion, declared to be unconstitutional, and a suggestion of error was filed, to which Judge Calhoon, who had delivered the opinion of the court, made response.

After the passage of the Madison act and the first assessment under it, another act was passed, in 1890 (Laws 1890, chap. 6). This act has not one syllable in it about adverse possession. Its whole purpose was to give property owners an opportunity to be heard for the correction of the valuation of their property made under an assessment under the Madison act. Of course, if the Madison act itself was unconstitutional, any other act merely sup-

plementary to it, and intending to deal with assessments made under the Madison act and under which assessments the sales were yet to be made, was itself unconstitutional. This is too clear for successful contention, and it is all that was decided by Judge Calhoon in replying to the suggestion of error in that case.

Now observe the question made in the case of *Hawkins* v. *Mangum* was whether the tax itself was valid. There was no contention on the part of the purchaser at the tax sale that he had ever been in possession of the land. There is not one word in the briefs of counsel about possession, and there is not a syllable in the opinion of the court delivered by Judge Calhoon, or in his reply to the suggestion of error, on the subject of adverse possession. How it could ever have been thought that this case afforded any support for the proposition that the statute of limitations prescribed by the Codes of 1880 and 1892 were inapplicable, in all cases where the sale under which possession was taken was void, we are unable to perceive.

The case next in order of time was that of *Hoskins* v. *Illinois Central Railroad Company,* 78 Miss. 768, 29 South. 518, 84 Am. St. Rep. 644. In that case the land was entered as a homestead under the act of Congress. It is well settled that, until a patent for such lands is issued, they are not taxable because they remain the property of the government. They were, nevertheless, taxed and sold. The purchaser at a tax sale got in possession and relied upon the three-year statute prescribed by the Code of 1892. Speaking on this subject, Judge Terral, delivering the opinion of the court, said that the lands were not taxable, and that the sale was absolutely void. He then proceeds as follows: "Section 2735 applies to sales of lands only that are taxable and salable, and in which there is some defect in the proceeding relating to the assessment or sale. In such cases the owner, knowing his land to be taxable, ought to be on his guard against their loss by any negligence of his own. It ap·

plies to lands that are taxable, and which should have been assessed, and which were assessed and sold; but the proceeding relating to the assessment or sale was infected with some infirmity of which the statute is to be the cure. It does not affect fundamental rights—as a liability to taxation, a question only of constitutional or legislative authority. Could it do so, the subordinate officers of government could defeat the will of the sovereign power and accomplish by indirection what the laws plainly forbid. The learned judge, in *Patterson* v. *Durfey,* 68 Miss. 779, 9 South. 354, places the reason for the statute upon the ground of 'neglect' of the taxpayer, but there is no neglect where there is no power in the authorities to assess the land for taxes. And this is true, whether the land is exempt because it belongs to the federal government, or to the state, or to the county, or to a municipality, or to a levee board, or is, for any reason, exempted from taxation. We see no reason in the nature or qualities of the exemption, by reason of the ownership of the land by the federal government or any other owner. We place our decision upon the ground that the property is exempt from taxation by law, and all attempt to subject it to taxation is in fraud or in violation of law, is the act of wrongdoers, and cannot give color for divesting the title of the owner by three years actual occupation, under section 2735, Code 1892. The cases of *Patterson* v. *Durfey,* 68 Miss. 779, 9 South. 354, and *Carlisle* v. *Yoder,* 69 Miss. 384, 12 South. 255, so far as they are in conflict with this decision, are overruled."

Now it is manifest that all that was said in *Hoskins* v. *I. C. R. R. Company* related to the nonliability of the land to taxation, and the rule laid down was that the statute had no application where the land could not be taxed. Judge Terral, proceeding, stated that there was no difference between the ownership of land by the federal government and by the state or the levee board or

other municipal authorities, if the land in their hands was nontaxable. He evidently meant to say that the cases of *Patterson* v. *Durfey* and *Carlisle* v. *Yoder* were over-ruled only in so far as they conflicted with the rule thus announced.

Now, as matter of fact, it is easy to show that there is no conflict between *Hoskins* v. *Railroad Co.,* on the one side, and *Patterson* v. *Durfey* and *Carlisle* v. *Yoder,* on the other. In *Patterson* v. *Durfey* it was not averred that the lands were owned by the levee board. It was only averred that they were assessed to the levee board, which might very well have been true, and yet they may not have been owned by the board. But in *Carlisle* v. *Yoder* it does distinctly appear that the lands were owned by the levee board. Now, lands owned by the levee board were not exempt from taxation. They were exempt from state taxes, but they were liable to county taxes and other local taxes. They were sold both for the state and county taxes, and, of course, the sale was void if it had been attacked; but it was not attacked, and the purchasers were permitted to remain in possession.

Here was default on the part of the former owner. His lands were liable to a part of the taxes for which they had been sold, and he sat by and permitted the purchaser to remain in possession. The language of Judge Terral, in *Hoskins* v. *Railroad Co.,* makes it clear that what he had in mind was a sale of lands which were not liable to taxation at all. He expressly says that section 2735 applies to sales of lands that are taxable and sala-ble, and in which there is some defect in the proceeding relating to the assessment or sale; and he says in such cases the owner, knowing his land to be taxable, ought to be on his guard against their loss by any negligence of his own.

The next cases are those of *Coffee* v. *Coleman,* 85 Miss. 14, 37 South. 499, and *Scarborough* v. *Elmer,* 87 Miss. 508, 40 South. 69. These cases simply followed *Hawkins*

v. *Mangum,* holding that a sale under an assessment under the Madison act was void. There is not a word in either case about adverse possession.

The next case in the order of time was *Kennedy* v. *Sanders,* 90 Miss. 524, 43 South. 913, in which there are some startling declarations made by Judge Whitfield in delivering the opnion of the court. In that case the land had been sold in May, 1875, for the taxes of 1874, precisely the case of *Brougher* v. *Stone.* Judge Whitfield, in delivering the opinion of the court, said that this sale was void—a proposition, we take it, never disputed by any lawyer. He then proceeds to say that in the court below the defense of adverse possession was not made and it was made for the first time in the supreme court, which could not be done. This, it would seem, would have been sufficient to have disposed of this defense, but he proceeds to state precisely what statutes of limitation were set up, to wit, section 1709 of the Code of 1871, the three-year statute (section 539 of the Code of 1880), and the ten-year statute (section 2730 of the Code of 1892), and says: "No such change of front, in the face of the pleadings and the proof in the court below, can be permitted. But, if it were allowed, the result must plainly be the same"—and proceeds to say, in a later part of the opinion: "The case of *Hoskins* v. *Railroad Co.,* 78 Miss. 768, 29 South. 518, 84 Am. St. Rep. 644, is decisive of the proposition that, where the tax collector has no power whatever to sell, none of these statutes of limitation invoked in this case have any application."

Now the court will observe that the learned judge has set out the ten-year statute of limitation as one of those relied on by the purchaser at tax sale, and then proceeds to say that the case of *Hoskins* v. *Railroad Co.* is decisive of the proposition that the statute can have no application.

Inasmuch as, under numerous decisions of this court, it is well settled that ten years' adverse possession by

a mere trespasser gives him a perfect title to the land, the declaration thus made is as alarming as it is novel. The idea that a purchaser at a tax sale void for any reason cannot invoke the ten-year statute of limitations certainly imports into our decisions an original and unique feature. Judge Whitfield, then proceeding, says: ''The principle, in the Hoskins case, is that land which is sold in the absence of any power whatever to sell it at all for taxes can never be held by virtue of the application of any of the statutes of limitations enacted in protection of tax sales. And this case of *Hoskins* v. *Illnois Central Railroad Company* expressly overrules *Patterson* v. *Durfey,* 68 Miss. 779, 9 South. 354, and *Carlisle* v. *Yoder,* 69 Miss. 384, 12 South. 255, and, by implication, also necessarily overrules the case of *Brougher* v. *Stone,* 72 Miss. 647, 17 South. 509. The same principle, in effect, is decided in *Howell* v. *Miller,* 88 Miss. 655, 42 South. 129.'' (*Howell* v. *Miller* was a case of swamp land belonging to the state at the time of the tax sale).

The judge then proceeds: ''It is of no consequence whatever, in the application of this principle, that the want of power to sell results from one cause rather than another, whether it be because of the nature of the swamp lands, or lands entered under the homestead laws of the United States, or lands pretended to have been sold under the abatement act, when they were not of the class as to which any power to sell under said act existed. The principle applicable in every such case is the same, to wit, that, where there is no power to sell, statutes of limitation enacted in the protection of tax titles have no application whatever.''

Here is the first declaration found in any decision of this court that an absence of power because of disregard of statutory requirement prevents the application of the statute. A sale under an assessment not returned at the time prescribed by law is a nullity; a sale on the wrong day is a nullity; a sale of a body of lands containing

more than one legal subdivision, without first offering it in such quantities, is a nullity; and there are other innumerable causes by reason of which there may be an absence of power in the collector to sell.

*Hoskins* v. *Railroad Co.* decided only that where the land was not taxable, and could not have been validly sold by strict conformity to law, the statute of limitations did not apply. There is not one word in the decision supporting the proposition that a sale in May, 1875, for the taxes of 1874, prevented the application of the statute. Certainly this court knew of the decision of *Brougher* v. *Stone* when the opinion in *Hoskins* v. *Railroad Co.* was written. If it had been intended to overrule that case, why was it not done? The cases of *Patterson* v. *Durfey* and *Carlisle* v. *Yoder,* were not overruled, except in so far as they were inconsistent with the opinion in *Hoskins* v. *Railroad Co.,* and, as we have attempted to show, there is no inconsistency, because the very ground of the decision in *Hoskins* v. *Railroad* was that the lands were not subject to any sort of tax, and could not have been taxed for any purpose, while in *Patterson* v. *Durfey* and *Carlisle* v. *Yoder* they were liable for taxation for all except state purposes.

*Eastland* v. *Lumber Company,* 90 Miss. 334, 43 South. 956, was the next case decided, and that simply follows *Kennedy* v. *Sanders.* Code of 1906, section 3095, contains this addition to section 2735 of the Code of 1892, to wit: "This section shall not apply when the sale is absolutely void and not merely irregular and voidable." This addition is found in the dummy code submitted to the legislature by the commissioners, Messrs, Whitfield, Catchings, and Hardy. It is found in section 2735 of the dummy code.

In *Eastland* v. *Lumber Company,* it is said, in reference to this addition to the former Code provision: "It is certainly fortunate that the legislature, in adopting section 3095 of the Code of 1906, has declared that that

section shall not apply when the sale is absolutely void—fortunate as the legislative declaration that the intent of the legislature never had been, as misinterpreted in *Carlisle* v. *Yoder,* 69 Miss. 384, 12 South. 255; *Patterson* v. *Durfey,* 68 Miss. 779, 9 South. 354, and *Brouger* v. *Stone,* 72 Miss. 647, 17 South. 509, that such a statute of limitations should cure a pretended sale for taxes when there never had been in truth and in fact any power to sell for taxes at all. That legislative provision was merely declaratory of what this court had already announced to have been the legislative intent in section 539 of the Code of 1880 and the other related statutes of limitation."

It is respectfully submitted to the court that, under any rule of construction announced in any text-book or decision, it must be assumed that, where new provisions are added to a statute, it was the legislative purpose to effect a change of the statute and not to declare the meaning of the unamended statute. How could the legislature of 1906 know what the purpose of the legislature in 1871 and 1892 was, except by reading the statutes themselves as enacted by those legislatures? But, further than this, this provision of the Code was added in the year 1906. The cases of *Kennedy* v. *Sanders* and *Eastland* v. *Lumber Company* were decided in 1907. If there is any case to be found, in the decisions of this court prior to that time, holding that the three-year statutes did not apply where the land was taxable and might have been taxed, we have been unable, after diligent search, to discover it. So far as we have been able to find, the first suggestion of this nature is to be found in the case of *Kennedy* v. *Sanders.*

The next case decided by this court is that of *McLemore* v. *Anderson,* 92 Miss. 42, 43 South. 878, 47 South. 801. A tax sale had been made in the year 1867, and made on the wrong day, and was therefore, of course, void, if assailed within the time prescribed by statute.

The lands had been bought by the state, and there had been a subsequent sale in 1869 to the levee board. This court, through Judge Whitfield, held that, conceding the application of the act of 1860 to the tax sale made in 1867, the state had waived the protection afforded by the statute, and that by the act of 1888 it had validated a sale for taxes made to the liquidating levee board, which the appellee had secured. The controversy in this case was between the appellee, claiming under the sale of 1867 and 1875, the title under which he had secured from the state, and the appellant, claiming under the sale to the liquidating levee board.

There is, however, in this decision a declaration of this court, through Judge Whitfield, its organ, that the state might by the act of 1888 validate a precedent sale made to the levee board, except as against constitutional defects in the sale. Judge Whitfield says: "On March 2, 1888, the legislature passed the well-known act of 1888 (Laws of 1888, p. 42), by section 5 of which the legislature expressly validated all sales made to the liquidating levee board, except as against certain persons, who had paid all taxes and were, at the passage of the act, in adverse possession of the land affected by such sale. It is not pretended that the appellees belonged to that class, and it is perfectly manifest that the act of 1888 not only made the deed of the commissioners, Gwin and Hemingway, *prima facie* evidence of a valid sale to the liquidating levee board, as provided in section 1 of said act, but, as stated, it also validated, except as against constitutional defects, all sales made to the liquidating levee board except as stated. Suppose it should be granted, therefore, that the state actually had title under the sale of July 4, 1867, made valid by the statute of limitations involving the act of 1860 and Code 1871, section 1709; was it not perfectly competent for the state to waive the effect of these statutes of limitation, which alone had given any validity, if it had any, to the sale of July 4,

1867, by this provision in section 5 of the act of 1888?
Was it not perfectly competent for the state, by section
5 of that act of 1888, to provide, as it did, that all deeds
made to the liquidating levee board should be valid, save
as against constitutional defects, except upon making
the showing, provided in that section, that the taxes had
been paid, etc.?''

In this case, therefore, the court, by necessary implica-
tion, has overruled the case of *Dingey* v. *Paxton,* for it
declares expressly the competency of the legislature to
pass a statute validating void sales made many years be-
fore, except as to constitutional defects.  What was de-
cided in *Dingey* v. *Paxton* was that the legislature had
no power to validate by the mere lapse of time pre-
viously void tax sales.  This was what was decided, and
all that was decided.

Now in *McLemore* v. *Anderson* it is expressly ruled
that the legislature did have the power to validate an
existing void tax sale, except as to constitutional defects.
How *Dingey* v. *Paxton* is to stand in the face of this dec-
laration in *McLemore* v. *Anderson* we confess our ina-
bility to perceive.  But if it be true, as held in *McLemore*
v. *Anderson,* that the legislature can, by a subsequent
act, cure irregularities and defects not constitutional in
ther nature, how is it possible to be denied that it has
power by a prospective statute, part of the very law
under which the land is sold, to provide a short statute
of limitations for the perfecting of titles under sales
void when made?

The next and latest case on the subject is that of
*Seals* v. *Perkins,* 96 Miss. 704, 51 South. 806, 52 South.
584.  It does not appear, from the report of this case,
that the appellant, Seals, who claimed under certain tax
sales, was ever in possession of the land, and therefore
neither the provisions of the Code of 1880 nor of 1892
in reference to three years' possession was involved.  The
appellant, however, claimed under a tax sale of March

13, 1876, to the state of Mississippi, and also under a
sale to the levee board on April 15, 1867. At the date of
these two sales the act of 1860, to which we have herein-
before referred, was in operation. This act, as we have
shown, did not require possession by the purchaser at
the tax sale. Judge Whitfield, delivering the opinion of
the court in this case, proceeds to show that the sale of
March 13, 1876, was void, because there was nothing in
the list of land sold to show who the grantee in the list
was, and also was void because the sale was made on
the wrong day. He then shows that the title claimed by
the appellant under the sale to the levee board on April
15, 1867, had been secured by the appellee prior to the
deed from the state to the appellant, and then says that
the sale was void because made on the wrong day. In
this case Judges Mayes and Smith did not concur in the
reasons given by Judge Whitfield for affirming the de-
cree of the court below. Of course, if the list of land
sold in March, 1876, did not show to whom the land
was sold, it was not a conveyance at all, and therefore
the appellant could not be said to be a purchaser at a
tax sale, for the reason that it was not shown by the list
that her grantor, the state, was the purchaser at the tax
sale. So, if the title acquired by the levee board on
April 15, 1867, was vested in the appellee, and not in the
appellant, it was wholly immaterial whether that title
was valid or void.

But Judge Whitfield, in delivering the opinion, in which
the other judges did not concur, except as to the result,
puts into his opinion the following statements: First,
referring to the sale of March 13, 1876, he says: "Again,
this recorded list, as shown by both of the copies in the
record, not only fails to show any sale of tax land to the
state as grantee, but it also shows that the alleged sale
was not made at the time prescribed by law. For this
reason this claim is unsound. None of the statutes of
limitation invoked, as we have repeatedly held can have

any effect to cure a sale fundamentally and absolutely void for want of power to sell.'' So again, referring to the sale of April 15, 1867, after having stated that this title had been secured by the appellee, he says: ''This tax deed shows on its face that the alleged tax sale was made on April 15, 1867. The law required the sale to be made on the second Monday of April, 1867—the 8th day of April. The deed does not show that the sale was made on the 15th of April in pursuance of a tax sale begun on the 8th of April, and continued or adjourned from day to day until the 15th of April, as required by law. There was no evidence of any kind to this effect. *McLemore* v. *Anderson*, 92 Miss. 42, 43 South. 878, 47 South. 801; *Kennedy* v. *Sanders*, 90 Miss. 524, 43 South. 913, and authorities cited therein.''

Now the court will observe that a sale on the wrong day is treated by the Chief Justice as a sale ''fundamentally and absolutely void for want of power to sell.'' There is not, in the opinion delivered by Judge Whitfield, the slightest reference to *Griffin* v. *Dogan, Nevin* v. *Bailey, Sigman* v. *Lundy, Jonas* v. *Flanniken, Gibson* v. *Berry,* or *Pipes* v. *Farrar.* They are contemptuously ignored and practically overruled, without being mentioned. Thousands of titles secured upon the faith of those decisions are endangered, if not destroyed, by a mere dash of the pen. And if it be the law, as stated in *Kennedy* v. *Sanders,* that no statute of limitations protects one claiming under a void tax sale, then, although claimants of land may have been in possession for forty years, their titles may yet be successfully attacked. It would certainly be a remarkable condition of things if *Brougher* v. *Stone* was overruled in *Hoskins* v. *Railroad Co.* without being mentioned, and *Griffin* v. *Dogan, Sigman* v. *Lundy, Nevin* v. *Bailey, Gibson* v. *Berry, Jonas* v. *Flanniken,* and *Pipes* v. *Farrar,* all overruled by *Seals* v. *Perkins,* without being mentioned in the opinion.

Just what the commissioners to recodify the law meant in submitting to the legislature, as an amendment to

section 2735 of the Code of 1892, the proviso that ''this
section shall not apply when the sale is absolutely void
and not merely irregular and voidable,'' we cannot con-
jecture. The proviso, of course, implies that there may
be an irregular and voidable tax sale which is not void,
and it also implies that there may be a void tax sale
which is not absolutely void. In *Seals* v. *Perkins*, Judge
Whitfield, in delivering the opinion of the court, adds
another adjective to characterize the void sale, as to
which the statute does not apply. He says the statutes
can have no effect ''to cure a sale fundamentally and ab-
solutely void for want of power to sell.'' These adjec-
tives serve rather to obscure than to elucidate the sub-
ject.

There is such a distinction as an act absolutely void or
relatively void. A relatively void act may be said to be
rather a voidable act; but, of course, there cannot be a
tax sale which is voidable merely. The distinction be-
tween an absolutely void and a relatively void act is
pointed out by Matthews, J., in *Ewell* v. *Daggs*, 108 U. S.
148, 2 Sup. Ct. 408, 27 L. Ed. 682. See, also, Anderson's
Dictionary, ''Void'' and ''Voidable.'' Since we have not
under consideration a construction of section 3095 of the
Code of 1906, it is unnecessary to further consider it.

It may be well just here to collect the decisions referred
to, for the purpose of seeing just what is now the posi-
tion of the court on tax titles as affected by the statutes
of limitation and curative acts.

First, in *Griffin* v. *Dogan*, 48 Miss. 11, it is held that
the act of 1860 is constitutional and protects after the
lapse of time named the title of the tax purchaser.

In *Vaughan* v. *Swayzie*, 56 Miss. 704, it was held that,
where the proceedings were *in fieri*, the legislature might
cure a defective assessment.

In *Nevin* v. *Bailey*, 62 Miss. 433, it was held that sec-
tion 1709 of the Code of 1871 was a prospective curative
act, and that after the lapse of time named therein the

title of the purchaser could not be assailed for any failure to comply with any legislative requirement and that a sale on the wrong day on an assessment void because not returned at the time required by law could not be assailed.

In *Gibson* v. *Berry,* 66 Miss. 515, 6 South. 325 and *Jonas* v. *Flanniken,* 69 Miss. 577, 11 South. 319, it was again held that the effect of the statute was to cure all irregularities in the sale, although the sale was void.

In *Metcalfe* v. *Perry,* 66 Miss. 68, 5 South. 232, it was held that the act of 1860 was not intended to apply at all where the taxes for which the land was sold had been paid before the sale. This was based upon the language of the statute, the court saying that "it referred to sales for the nonpayment of taxes due and unpaid."

In *Pipes* v. *Farrar,* 64 Miss. 514, 1 South. 740, that the statute did apply where the state had purchased the land and subsequently conveyed it to an individual.

In *McGee* v. *Holmes,* 63 Miss. 50, that the statute did not apply where the purchaser at the sale stood in a fiduciary relation to the owner and would have been disabled to buy at a good tax sale.

In *Clay* v. *More,* 65 Miss. 81, 3 South. 142, that the statute was not applicable, unless it was shown that the person in possession held immediately or remotely under a conveyance by a tax collector.

In *Lewis* v. *Seibles,* 65 Miss. 251, 3 South. 652, 7 Am. St. Rep. 649, that the statute did not apply, except to protect the title as against assailment for defects in a tax sale and that where both parties claimed to have secured that title, both affirming its validity, that the statute had no application.

In *Patterson* v. *Durfey,* 68 Miss. 779, 9 South. 354, that section 539 of the Code of 1880 operated to protect the title of the purchaser, although the taxes for which the land had been sold had actually been paid before the sale.

In *Carlisle* v. *Yoder,* 69 Miss. 384, 12 South. 255, that the statute did apply, although the assessment was a void assessment, and although the land was owned by the levee board in the year when the taxes accrued; the land being exempt from state taxes at that time.

In *Brougher* v. *Stone,* 72 Miss. 647, 17 South. 509, that the statute did apply, although the lands were sold under a law not applicable. The lands in this case were sold for the taxes of 1874 in May, 1875, at which time only lands salable under the abatement act could be sold.

In *Hoskins* v. *Railroad Co.,* 78 Miss. 768, 29 South. 518, 84 Am. St. Rep. 644, that section 539 of the Code of 1880 did not apply where the lands at the time of the tax sale were not taxable at all, being exempt as the property of the United States.

In *Hawkins* v. *Mangum,* 78 Miss. 97, 28 South. 872, that a sale under an assessment made under the Madison act was void. There was no question of the application of the Code provisions involved in this case.

In *Coffee* v. *Coleman,* 85 Miss. 14, 37 South. 499, and *Scarborough* v. *Elmer,* 87 Miss. 508, 40 South. 69, the decision in *Hawkins* v. *Mangum* was simply followed. There was no question of possession presented in either case.

In *Dingey* v. *Paxton,* 60 Miss. 1038, it was held that the legislature could not, by retroactive law passed after a void sale for taxes had been made, validate the sale.

In *McLemore* v. *Anderson,* 92 Miss. 42, 43 South. 878, 47 South. 801, that the legislature could by a retroactive law, validate a previous sale void when made. No reference is made in this decision to the case of *Dingey* v. *Paxton,* but, of course, it is, in effect overruled.

In *Kennedy* v. *Sanders,* 90 Miss. 524, 43 South. 913, it is held that, where a sale was made under the abatement act in May, 1875, of lands not salable under that act the sale was void, and that no statute of limitations, either the three-year statute or the ten-year statute pro-

tected the title. In this case it was said that it was of no consequence that the want of power to sell results from one cause rather than another, whether it be because of the nature of the lands as swamp lands or homestead lands, or lands sold under the abatement act when they were not of the class as to which any power to sell under the act existed.

In *Eastland* v. *Lumber Company,* 90 Miss. 330, 43 South. 956, it was held that where a sale was made under the Madison act, declared unconstitutional in the case of *Hawkins* v. *Mangum,* that the statute of limitations did not apply; the court declaring "that no act of limitations passed by the legislature can have any application whatever to a tax sale void, because the assessment was made under an act of the legislature which was itself unconstitutional." The court in this case repeats what had been said in the case of *Kennedy* v. *Sanders,* the effect of which is that a purchaser at such sale would not be protected even by the ten-year statute of limitations which gives title even to a trespasser.

In *Seals* v. *Perkins,* 96 Miss. 704, 51 South. 806, 52 South. 584, Judge Whitfield, who wrote the opinion, in which the other two judges did not concur, again declared that neither the provisions of the act of 1860, nor of the Code of 1871, nor of the Code of 1880, nor the Code of 1892, would apply where a tax sale was void because made on the wrong day.

It will be noted that in *Kennedy* v. *Sanders, Eastland* v. *Lumber Company, McLemore* v. *Anderson,* and *Seals* v. *Perkins,* the court denied the protection of the three-year statute prescribed by the Codes of 1880 and 1892, for the reason that the tax sale under which the purchaser claimed was void, thus holding, in effect, that the purchaser was only protected where his title was good and needed no protection by the possession under the statute.

We come now to consider the case of *Jordan* v. *Bobbitt,* 91 Miss. 1, 45 South. 311. We shall attempt to

demonstrate to the court that *Jordan* v. *Bobbitt* is wholly irreconcilable with, and necessarily overrules, *Eastland* v. *Lumber Company, Kennedy* v. *Sanders,* and *McLemore* v. *Anderson.*

*Jordan* v. *Bobbitt* was a case arising while the Code of 1871 was in force and involved a construction of section 2173 of that Code, which was as follows: "No action shall be brought to recover any property heretofore sold by any administrator, executor, or guardian by virtue of the order of any probate court in this state, on the ground of the invalidity of such sale, unless such action be commenced within one year after this chapter shall take effect, if such sale shall have been made in good faith and the purchase money paid; nor shall any action be brought to recover land or other property hereafter sold by order of a chancery court where the sale is in good faith and the purchase money paid, unless brought within one year after such sale."

This statute was first construed in the case of *Morgan* v. *Hazlehurst Lodge,* 53 Miss. 665. In that case the court had construed the statute as beginning to run from the date that the purchaser under the sale had taken possession. In *Jordan* v. *Bobbitt,* the principal question was whether the statute had any application to a remainderman, and it was decided that it did. But the contention was also made in that case that, even if the statute was applicable to a remainderman, its protection could not be availed of in that particular case, first, because all the debts against the estate were barred by limitation; and, secondly, because the decree of the probate court ordering the lands to be sold was void for want of proper notice to the heirs at law. Judge Mayes, in delivering the opinion of the court in this case, expressly says: "That the decree of the probate court in 1873 ordering these lands to be sold appears to be void for want of proper notice to the parties."

Judge Mayes also quotes with approval from the opinion of Judge Simrall in *Morgan* v. *Hazlehurst Lodge* as

follows: ''The statute is remedial and curative, has its origin in that policy, and, if the words will admit of it, should receive that construction which will accomplish the end aimed at. It was meant to cure all defects in the sale, no matter from what cause, whether before or after the decree, unless the heir brought his action within the time, to contest and show its invalidity. Though the sale be void, he is in under color and claim of title, and the statute does no more than to protect and perfect his imperfect right, after the expiration of a year from the time to bring suit arose.''

On page 87 of 91 Miss., on page 342 of 45 South., Judge Mayes further says: ''There is no contention by anybody that this sale was a valid sale; but, as repeatedly held by this court, for the statute to become effective, it is not necessary that there should have been a valid sale. Indeed, if there was a valid sale, there would have been no need for the statute. The purpose of the statute is to render unassailable, after one year from the date of sale, the title to any property sold by order of the probate court. In order for this statute to become effective and fasten itself upon the transaction, it is only necessary that the sale should take place by order of the court. It need not have been a valid sale. It extends to void sales. This whole record shows that this sale did take place under an order of the probate court. . . . It may be conceded that the sale by the administrator was for debts barred by the statute of limitations, and that there was no proper notice served on the heirs, and that the sale was void; but all these things do not prevent the one-year statute of limitations from applying, because, however irregular and defective the proceedings leading up to the sale, still the court had jurisdiction of the administration, and the sale was made by order of the probate court. No act or irregularity of the administration can prevent the statute from running in favor of a purchaser who has paid the purchase money in good faith,

unless he had participated in the wrong-doing of the administrator.'' Judges Mayes then quotes at length from the opinion of Judge Cooley in *Toll* v. *Wright,* 37 Mich. 93, and from several other opinions in other states.

Judge Calhoon also delivered an opinion, in which he says: ''When the land was sold, the sale, even if void, could not be attacked after one year. If there was an outstanding term, an attack not allowable until it expired, then there must be the one year after expiration. Any other construction plainly emasculates the import and purpose of the statute. It would eliminate from its scope any outstanding lease. It is useless to discuss section 4, Code 1880, and the corresponding sections in the Codes of 1892 and 1906, because the purchaser here bought under section 2173, Code 1871, and acquired a title not to be affected by subsequent enactment. It was part of his contract. *Sigman* v. *Lundy,* 66 Miss. 522, 6 South. 245. It was one of the statutory inducements to purchasers.''

Again Judge Calhoon says: ''However defective the administration proceedings may be, before or after the sale, the section cures all defects ·(*Morgan* v. *Hazlehurst Lodge,* 53 Miss. 665; *Bradley* v. *Villere,* 66 Miss. 399, 6 South. 208), and so the lack of a decree of confirmation is of no avail.''

In *Bradley* v. *Villere,* 66 Miss. 399, 6 South. 208, it was held that section 2693 of the Code of 1880 (the same statute as that involved in *Jordan* v. *Bobbitt*) protected a purchaser under a chancery sale where the land was sold in violation of the express provision of section 18, article 12, of the Constitution, which requires all lands sold at execution or judicial sales to be divided into tracts not to exceed 160 acres. In that case Judge Campbell, delivering the opinion of the court, said: ''It is certain that section 2693 of the Code is ·as broad and comprehensive as to the sales it embraces as the constitutional provision referred to, and applies its beneficent cure to sales without regard to what makes them void. The ar-

gument that good faith is not predicable of a sale made in disregard of the constitutional requirement is not sound, for in this respect there is no difference between a sale avoided by a disregard of the Constitution and one made void by want of conformity to a constitutional law. The latter is as obligatory as the former. The only difference is that the Constitution cannot be abrogated by the legislature, while a law may be, but as long as a statute is unrepealed it is as binding as the fundamental law.''

In *Jordan* v. *Bobbitt,* Judge Whitfield dissented, and argued for the exact proposition announced in the recent cases of *Eastland* v. *Lumber Company, Kennedy* v. *Sanders,* and *McLemore* v. *Anderson.* He says: ''An unconfirmed sale is in the eye of the law, absolutely no sale at all. To invoke this section 2173 in the case of a sale absolutely null and void because there were no debts for which the land could be sold, and because there was no notice to the parties, and because there was no confirmation of the sale, is exactly the same thing as if it were invoked to support a sale by the chancery court, where there never had been any process served on the parties affected, and never had even existed any debt whatever, much less a debt barred by the statute of limitations. In such a state of case, no court, in my judgment, could ever apply section 2173 in support of such a pretended sale as that. To do so is to deprive of property without due process of law, in direct violation of the state and federal Constitutions.''

Again, Judge Whitfield relies upon the decisions in reference to void tax sales and says: ''Most manifestly the chancery court had no power, under any circumstances whatever, to sell the lands of this decedent to pay debts if in fact none existed to be paid. How can anything be plainer than that a proceeding, which could not under any circumstances be valid cannot be made valid by the mere lapse of time? We have repeatedly

held, recently, that none of the short statutes of limitations which protect tax sales can possibly have any application, if there existed no power to sell the land for taxes, whether the want of power was due to one cause or another; that, in every such case, these statutes of limitation had no sort of application."

Again, Judge Whitfield in the argument says: "There are some things which the majority opinion concedes: (1) That the sale was absolutely null and void; (2) that it was so void for the want of notice to the parties—void, in other words, for the want of jurisdiction; and (3) that there is nothing in the letter of the statute applying this bar to a case of this sort."

There is therefore no doubt that Judge Whitfield understood the position of the majority of the court and that it intended to apply the protection of the statute to a sale void for want of jurisdiction in the court by whose order it was sold. In a subsequent part of his dissenting opinion, Judge Whitfield makes this startling announcement. He says: "Another most astounding proposition to my mind is the citation of the case of *Bradley* v. *Villere,* 66 Miss. 399, 6 South. 208, which held that section 2173 of the Code of 1871 applied as well to sales made in disregard of the Constitution as to those in violation of statutes. This doctrine has been repudiated in a dozen cases within the last ten years. It certainly needs no argument to show, since the decision of *Hawkins* v. *Mangum,* where my Brother Calhoon said, in 78 Miss. 97, 28 South. 872 (and in at least a dozen other decisions to the same effect), that no sale which violated the Constitution could ever be protected by any statute of limitations, and that no statute of limitations was ever intended to apply to a sale void for unconstitutional reasons."

However astounding it may have been to Judge Whitfield that Judge Calhoon should cite the case of *Bradley* v. *Villere* with approval, it is not more astounding than

that Judge Whitfield should construe the decision in the case of *Hawkins* v. *Mangum* as holding that no statute of limitations could ever protect a sale made in violation of the Constitution. There is not a word tending to that conclusion in that opinion. In fact, the point was not only not decided, but there is no suggestion that it was ever considered by the court.

It is also strange that if there had been a dozen cases holding, as Judge Whitfield affirms, that no sale which violated the Constitution could ever be protected by any statute of limitations, not one such case was cited by him.

The whole trouble with Judge Whitfield, in his dissenting opinion in *Jordan* v. *Bobbitt,* was that he failed to perceive, or rather to admit that section 2173 of the Code of 1871 protected the title, not because it was good and not because it was bad for one reason or another, but simply and purely because of possession by the purchaser under the statute. All these statutes manifestly presuppose that the purchaser is in under an invalid claim; for, if his title is a good one, as said by Judge Mayes, there is no need for the statute. But none of the statutes say that a bad title presupposed shall be protected if bad for one reason, and not protected if bad for another. No matter what the infirmity of the title is, if it falls within the class designated by the statute, it is protected by the statute. The suggestion that a title void for disregard of a constitutional law may be protected, while one void for a disregard of the Constitution itself will not be, is fanciful. What possible difference is there, in cases of this sort, between a constitutional law and a Constitution? Both are laws, and equally binding upon the courts and upon all the officers of the state and upon all the inhabitants of the state. A law may be repealed by the legislature. A constitutional provision may not be; but, if repealed at all, it must be by the body of the people by which it was

ordained. But as long as they stand unrepealed they are of equal force.

I again call the attention of the court to the fact that in *Kennedy* v. *Sanders* it was declared that precisely the same rule must be applied, whether the objection to the tax sale resulted from one cause or another, and this, in the very nature of things, must be the true rule. A tax sale is either void or valid. If void, it is absolutely void; it is fundamentally and absolutely void, and no multiplication of adjectives can change its nature. There can be no degrees in voidness.

It is submitted that the cases of *Eastland* v. *Lumber Company, Kennedy* v. *Sanders,* and *McLemore* v. *Anderson,* and what is said by Judge Whitfield in *Seals* v. *Perkins,* must be receded from, or the case of *Jordan* v. *Bobbitt* overruled. It is impossible that they can be reconciled, unless it be true that a title under a void administrator's sale is protected by the short statute of limitations prescribed in such cases, and that a purchaser at a void tax sale is not entitled to the protection of the short statutes of limitation provided for such sales.

It was conceded by a majority of the court in *Jordan* v. *Bobbitt* that the sale was void, first, because all debts of the estate were barred by limitation when the order of sale was made, and secondly, because no notice to the heirs at law was given in the proceedings in which that order was made.

I shall not take up the time of the court in discussing the self-evident proposition that it is as much a violation of the Constitution to render a decree affecting property rights without notice to the owner as it could be for the legislature to authorize a sale of the land of an owner for taxes under an assessment made under an unconstitutional law.

Both the Constitution of 1869 (article 12, section 8) and that of 1890 (section 79) declare that "the court shall

apply the same liberal principles in favor of such titles as in a sale by execution." By express constitutional provision, the court has no right nor power to declare one rule as controlling void administrator's sales, and another rule as controlling void tax sales.

The court will also consider the inevitable result of overruling the case of *Jordan* v. *Bobbitt.* If that case is overruled upon the ground that the statute does not apply to a void sale there must go with it the cases of *Morgan* v. *Hazlehurst Lodge,* 53 Miss. 665, *Hall* v. *Wells,* 54 Miss. 289, *Summers* v. *Brady,* 56 Miss. 10, *Bradley* v. *Villere,* 66 Miss. 399, 6 South. 208, and all other decisions following the case of *Morgan* v. *Hazlehurst Lodge.*

It has been fifty years since the first of these statutes was passed and forty-seven years since the decision of *Griffin* v. *Dogan,* in which its constitutionality was upheld. The act of 1860 was brought forward into the Code of 1871, thirty-nine years ago, and was repealed thirty-four years ago by the act of 1876.

Many thousand transactions have been made, doubtless, in reliance upon these statutes as construed by this court. Even if the decisions thus made and thus becoming a rule of property did not commend themselves to the judgment of this court, they ought to be maintained upon the doctrine of *stare decisis.*

In *Plummer* v. *Plummer,* 37 Miss. 185, this rule was declared, though the statute had not been construed by the highest court, but only by the inferior courts of the state.

In *Lombard* v. *Lombard,* 57 Miss. 171, George, C. J., delivering the opinion of the court, said: "It would be a great evil if questions once settled on full argument and mature deliberation were subject to be reopened and decided differently upon every change in the members of this court, and consequent changes in the temper and mental organism of the judges. Settled rules, so far as they relate to rights of property, on which the people

may repose with confidence and security, are essential to the welfare of society.  It is impossible to lay down any precise rule, which governs .inflexibly a court of last resort, in adhering to or departing from a former decision.  It is safe, however, to say that the rule of *stare decisis,* so far as it relates to decisions of this court, should not be disregarded, except on the fullest conviction that the law has been settled wrong; and even then it is better to leave the correction to the legislature in all cases where a departure from it would have the effect to disturb vested rights, resulting from transactions entered into under the law as settled.  In such cases, a departure from former rulings should never take place except upon the clearest necessity and the most assured conviction that the former ruling was erroneous.''

The declaration made by Judge Whitfield in the case of *Seals* v. *Perkins* would, if accepted by this court, overrule all the cases previously decided upon the construction of the act of 1860 and section 1709 of the Code of 1871.

The decisions in *Eastland* v. *Lumber Company, Kennedy* v. *Sanders,* and *McLemore* v. *Anderson* are totally inconsistent with and overrule all prior decisions of this court construing sections 539 of the Code of 1880 and 2735 of the Code of 1892.

The opposing views entertained by Judge Whitfield to the majority of the court in *Jordan* v. *Bobbitt,* shortly stated, are these:

Judge Whitfield thought that no statute of limitations passed by the legislature could protect the possession of one claiming under a void sale.  The other judges thought that the protection was afforded by the statute in the class of cases it provided for, regardless of the invalidity of the title in its origin; that possession for the time named was all that is required in the class of cases designated by the legislature.

It is for this court now to determine which of these conflicting rules shall be accepted.  It is to be hoped that,

upon full and mature consideration, the true rule will be announced by a unanimous court, and that, when once settled, it will be adhered to for all time.

It is left somewhat in doubt by the various utterances of Judge Whitfield, whether he intended to deny the application of the statute where the sales were void because of want of power in the legislature to pass such statutes, or to concede the power and deny the legislative purpose to have been to apply the statute to such sales. We take it that he intended to deny the power, because he says, in *Kennedy* v. *Sanders,* that "the principle applicable in every such case is the same, to wit, that, where there is no power to sell, the statutes of limitation enacted in the protection of tax titles can have no protection whatever."

By this declaration he concedes the legislative purpose to have been to protect, for he says they are statutes of limitation "enacted in the protection of tax titles."

We cannot conclude this brief without noting that all these declarations that the statute cannot apply where the sale is void are not supported either by argument or by the citation of authorities. Of course, while the legislature may prescribe the various periods of limitation, they must not be so short as in effect to deprive a party of a reasonable opportunity for the assertion of his rights, and we concede that, whether or not a period of limitation prescribed by the legislature is too short, is a question for decision by the courts. But when it is conceded that the period allowed is a reasonable period, we respectfully deny that there exists any power in this or any other court to declare unconstitutional a statute of limitations or any other remedial statute of like nature.

What authority has this court to substitute its judgment for that of the legislature, as to whether or not particular rights should be asserted within particular periods of time? It is not too clear for argument that the enactment of statutes of limitation is a matter of

legislative and not judicial power? Is this not the universal rule? Has it ever been denied by any court or text-writer? Take our statutes of limitations: The general statute for the recovery of lands is ten years (section 3090); actions for penalties must be brought within one year (section 3101); actions for assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, and for libels, are required to be brought within one year (section 3102); actions on domestic judgments are required to be brought in seven years (section 3103); actions on open accounts or stated accounts not acknowledged in writing are required to be brought in three years (section 3099); all actions for which no other period of limitation is specifically prescribed must be brought within six years (section 3097).

Now, if the legislature may thus distinguish as to the time within which these various actions may be brought and may prescribe one period for one action and another period for another, what rule of constitutional law prevents a legislature from requiring that actions assailing a tax title must be brought within three years from the time when the purchaser at tax sale goes into possession?

In *Briscoe* v. *Anketell*, 28 Miss. 361, 61 Am. Dec. 553, Judge Handy, in delivering the opinion of the court, said: "It is too well settled to admit of question at the present day that statutes of limitation pertain to the remedy and not to the essence of the contract, and that it is within the power of the state legislature to regulate the remedy and modes of proceeding in relation to past as well as to future contracts. This power is subject only to the restriction that it cannot be exercised so as to take away all remedy upon the contract, or to impose upon its enforcement new burdens and restrictions which materially impair the value and benefit of the contract. *Bronson* v. *Kinzie*, 1 How. 315, 11 L. Ed. 143; *McCracken*

v. *Hayward,* 2 How. 612, 11 L. Ed. 397. And accordingly it has been held to be within the undoubted competency of the state legislatures to shorten the periods of limitations of actions, to change existing rules of evidence, and to prescribe new rules of evidence and judicial procedure, all to affect both past and future rights of action. *Sturges* v. *Crowninshield,* 4 Wheat. 122; 4 L. Ed. 529; *Jackson* v. *Lamphire,* 3 Pet. 290, 7 L. Ed. 679; *Bronson* v. *Kinzie,* 1 How. 315, 11 L. Ed. 143. Such acts are held to be invalid when they deprive the party of all remedy, by changing the period of limitation, or destroying the validity of the proof on which his claim rested, and rendering it impossible to establish his right."

See, also, *West Feliciana R. R. Co.* v. *Stockett,* 13 Smedes & M. 395.

This proposition is too well settled, we take it, to require argument at this day. If, as was held in the case of *Jordan* v. *Bobbitt,* a limitation of one year affords reasonable opportunity to the owner whose property has been sold under a void judicial sale, and is therefore constitutional, how can it be said that a period of three years given to the former owner in which to recover his property sold at a void tax sale is too short, and therefore unconstitutional. Certainly the legislature intended that the act should apply in all cases where the land was taxable and might have been sold for taxes if proceeded against regularly. The owner knows, or is conclusively presumed to know, that the purchaser at the tax sale is in possession, and the legislature had declared, without making any exception or distinction between a sale void for one reason or void for another, that no suit shall be brought after the lapse of three years to assail the title because of any defect in the tax proceeding. No exception is made in the statute, and none can be ingrafted by judicial decision. The whole subject is one which rests in legislative discretion, and it is respectfully submitted that the only questions which this court can, of right, con-

sider and decide, are, first, what the legislative purpose was; and, that being found, second, whether the time prescribed by the legislature affords the owner a reasonable opportunity to assail the title.

### REJOINDER BRIEF.

On the argument of this case, I was asked by the chief justice whether or not, the act of 1888 having been declared unconstitutional in the case of *Hawkins* v. *Mangum,* there was any such thing as a tax sale in the year 1892, so as to bring a purchaser in possession within the protection of the statute of three years.

I was asked by Commissioner Whitfield whether I stood by the case of *Patterson* v. *Durfey,* and contended that the three-year statute would protect the title, even where the taxes had been paid, to which I replied that I did.

I desire, in this brief, to reply to both inquiries. The land in this case was sold while the Code of 1880 was in operation. The language of the three-year statute is as follows: ''Actual occupation for three years, after one year from the day of sale of any land held under a conveyance by a tax collector, in pursuance of a sale for taxes, shall bar any suit to recover such land or assail such title because of any defect in the sale of such land for taxes, or any precedent step to said sale,'' etc.

In *Metcalfe* v. *Perry,* 66 Miss. 69, 5 South. 232, it was held that the act of 1860 was not intended to bar a suit to set aside a title acquired under a tax sale, unless brought within five years from the date of the sale where the taxes had been paid. This was based upon the express provision of section 7 of the act of February 10, 1860, which was that ''all sales of lands hereafter made for the nonpayment of taxes due under any law of this state, shall be valid to all intents and purposes,'' etc.

The court said that, where taxes had been paid, the statute by its express provisions did not apply, for it related only to a sale for taxes due. It will be observed

just here that the act of 1860 had no reference whatever to possession. It was a prospective curative act, as afterwards held by this court in the case of *Nevin* v. *Bailey.*

Now section 539 of the Code of 1880 is wholly different. It provides only that the party who is in possession and claims the benefits of the statute shall hold "under a conveyance by a tax collector in pursuance of a sale for taxes."

Of course, as I have stated throughout my argument, I do not claim any title whatever by virtue of the conveyance. I .only claim that, as appellant holds under a conveyance by a tax collector in pursuance of a sale for taxes, the appellant is in the class of persons intended to be protected. This court, in the case of *Patterson* v. *Durfey,* decided the precise point.

My proposition was that the case of *Patterson* v. *Durfey* was not overruled at all by the case of *Hoskins* v. *Railroad Co.,* and never has been overruled until the decisions in the cases of *Eastland* v. *Lumber Company, Kennedy* v. *Sanders, McLemore* v. *Anderson, etc.*

The recent cases overrule, not only *Patterson* v. *Durfey,* but every other case ever before decided by this court on the protective effect of the act of 1860, the Code of 1871, the Code of 1880, and the Code of 1892. There is not a fragment of any of these cases left, if the decisions in the later cases are to be adhered to. Unless it is possible to hold that a totally different construction must be given to the statutes intended to protect purchasers at tax sales from that given to the statute intended to protect purchasers at administrator's sales, not only must every tax title case heretofore decided be overruled, but *Jordan* v. *Bobbitt, Morgan* v. *Hazlehurst Lodge, Hall* v. *Wells,* and all the other cases following *Morgan* v. *Hazlehurst Lodge,* must also go.

The conflict between the decisions of the court is palpable, and, as it seems to me, irreconcilable. One or the other of the class of decisions must go by the board. It

is respectfully submitted that it is essential that this conflict of decisions should be now cured, by taking either the one view or the other, and it is also respectfully submitted that this court will not by fanciful and nice distinction continue the confusion by a strained effort to reconcile the cases, rather than overturn one class of them.

The act of March 8, 1888, known as the Madison act (Acts of 1888, p. 24), did not displace the machinery for the collection of taxes. It simply declared an unconstitutional scheme for the valuation of lands in the state. It had no relation whatever to personal property, and, of course, not only personal property might have been sold for taxes, but lands might have been sold for the taxes due on the personalty. The board of supervisors was not displaced as a tax agency. It had still power to levy the taxes for county purposes, and the legislature had fixed the rate of taxes for the state. The whole difficulty was that the legislature invaded the province of the tax assessor and declared unconstitutional scheme for the valuation of the lands. There was still a board of supervisors having jurisdiction for the levy of taxes and the assessment of property. There was still an assessor and still a tax collector. The whole machinery was left, but direction was given to one officer as to how valuation should be reached, and that direction the legislature had no power to give. What ought to have been done was to disregard all the provisions of the act of March 8th.

I do not think it can be doubted that if the board of supervisors of any county in the state and the assessor had concurred in the view that the act was unconstitutional and had proceeded to value the property under the constitutional scheme, that the sales would have been perfectly legal. They would not have been illegal, certainly, because the unconstitutional act had been disregarded.

I doubt if there ever has been in any county in the state an effort by the constituted authorities to execute the

constitutional scheme of valuing property according to its true value. We all know that, instead of the property in the state being valued as the Constitution declares it shall be, it is intentionally assessed at from fifty to seventy-five percent of its value in all the counties, and in many of them at a very much less rate. In fact the willful disregard of the constitutional scheme caused by the legislature to appoint a committee three years ago for the purpose of providing some plan by which, at least, uniformity might be established.

I do not care to go into the argument as to whether *Hawkins* v. *Mangum* was correctly decided. I think it might very well have been argued that, since the property-owner did not object to the valuation placed upon his property at the proper time and appeal from the action of the board of supervisors as provided by the statute he was precluded from raising an objection. But certainly there was a sale for taxes by the tax collector, and certainly the appellant here was a purchaser at such tax sale. If the court now should declare that there could have been no tax sale where the assessor attempted to conform to the provisions of the act of 1888, instead of ending the confusion, added confusion would result.

Observe the point made by the landowner: He says the sale was void because his property was not assessed under the constitutional scheme. There is no claim that it was assessed at more than its value. In the absence of an averment that the assessment of his property was greater than its value, the landowner would not be entitled to any relief, because he would not have shown that under the assessment he was required to pay more than he would have been required to pay if his land had been assessed under the old statutes.

Now the Constitution provides not only for an assessment for property at full value, but also that "taxation shall be uniform and equal throughout the state." Constitution, section 112.

The objection which lies at the root of the Madison act is that it does not provide for assessment of each particular piece of property according to its full value. Although the landowner may not have been injured by an assessment of his property under the Madison act, if it was not assessed at more than its full value, each taxpayer is deprived of his constitutional protection unless all other property is assessed under a scheme at least providing for full valuation.

The appellee here could not, under the facts stated, have complained if his property had been assessed under the Madison act and all other property had been assessed according to its value. But, since the scheme did not provide for an assessment of the body of the property in the state upon a valuation, it was unconstitutional.

The act of 1888, however, as I have said, did not displace the ordinary machinery for the levy and collection of taxes. It simply declared an unconstitutional scheme for the valuation of property by the assessor. All officers charged with any duty in reference to the assessment of taxes were left in the performance of the functions of their office, constrained, however, by the provisions of an unconstitutional act.

The assessment under which the lands of the appellee were sold was an assessment made by the assessor and approved by the board of supervisors. It ought not to have been made as it was made, and was not a valid assessment. The sale made by the tax collector was a sale for taxes, and the purchaser was a purchaser claiming under a deed from the tax collector made under a sale for taxes.

If the assessment roll had contained a true assessment of every piece of property in the county, assessed according to the constitutional scheme at its full value, and had not been returned and filed by the assessor at the time prescribed by the statute, such an assessment would have been void, just as much as the assessment actually made

was void. It would have been void for another reason, but equally void. So, because the assessment was void, the tax collector could make no valid sale under it. He could, however, make a sale and did in fact make a sale. Now, if the assessment and the sale was valid, the statute did not apply, because it was not needed. Possession for three years under the statute does not make either the assessment or the sale valid. It simply prevents all questions being raised by the former owner.

In *Jordan* v. *Bobbitt* the chancery court had general jurisdiction over the subject of the administration, just as here the board of supervisors, assessor, and tax collector had authority to act in reference to the general purpose of taxation. In *Jordan* v. *Bobbitt*, while general jurisdiction remained in the court, it had no jurisdiction in the particular case, because all the debts against the estate had been barred by limitation and the heirs at law were not cited to appear. A decree was, nevertheless, rendered; but it was not a decree which was valid, and it was not a decree which the legislature might have authorized to be made under the circumstances. Suppose the legislature had provided that a decree might have been made without notice to the heirs at law; such a decree would have been absolutely void as violative of section 14 of the Constitution, which declares that "no person shall be deprived of life, liberty or property except by due process of law." *Donovan* v. *Vicksburg,* 29 Miss. 247, 64 Am. Dec. 143; *Jack* v. *Thompson,* 41 Miss. 49; *McBride* v. *Revenue Agent,* 70 Miss. 716, 12 South. 699; *Memphis Mach. Works* v. *Aberdeen,* 77 Miss. 420, 27 South. 608.

What difference can there be between a void assessment, authorized to be made by an unconstitutional statute, which violates one clause of the Constitution, and a void decree, made in the absence of any legislative authority, but void because infringing another provision of our Constitution.

In *Jordan* v. *Bobbitt,* notwithstanding the fact that the decree of the court authorizing the sale was conceded to be void, and, among other reasons, void because it violated section 14 of the Constitution, possession by the purchaser for the statutory period was held to be protected by the statute.

If it be said that the assessment under the Madison act was a nullity, and therefore a purported sale made by the tax collector under such assessment was not a tax sale, within the meaning of section 539 of the Code of 1880, how can it be said that a void decree, void because it violated section 14 of the Constitution, was a nullity, but that a sale made under it was a sale, so that the purchaser under it was protected by section 2173 of the Code of 1871?

In *Jordan* v. *Bobbitt* there was a void decree, and void upon constitutional grounds, *viz.,* that the lands of the heirs at law were condemned to sale without notice. In the instant case there was a void assessment, void because the land of the appellee was arbitrarily valued by the legislature in violation of the constitutional scheme.

In *Jordan* v. *Bobbitt* the chancery court had general jurisdiction over the subject-matter, to wit, sales by administrators, but did not have jurisdiction in the particular case, because there had been no service on the heirs at law. In the instant case the board of supervisors and the tax assessor and the tax collector had general power over the subject of the assessment and collection of taxes, but they had no right to sell the lands of the appellee because of the void assessment.

In *Jordan* v. *Bobbitt,* notwithstanding the void decree, there was a sale by the sheriff. In the instant case, notwithstanding the void assessment, there was a sale by the tax collector.

In *Jordan* v. *Bobbitt* it was held by this court that, although there was no power in the court to render the decree and no power in the sheriff to sell under it, the

purchaser was a purchaser at a probate sale, and, having been in possession for more than one year, was protected by the statute of 1871, and that the heir at law was precluded by the lapse of time from showing the nullity of the decree.

If the purchaser in the case of *Jordan* v. *Bobbitt* was a purchaser at a probate sale, how can it be said that the purchaser at the tax sale of 1892 was not a purchaser holding a conveyance from the tax collector, made under a sale for taxes?

No subtlety of intellect nor astuteness of reason can obstruct the parallelism that exists in these cases. It is, of course, possible to announce that there is a distinction, without showing how and where it arises; but it is submitted that no distinction can be pointed out and maintained by any process of clear and logical reasoning.

### BRIEF OF FRANK E. EVERETT, FOR APPELLEE AND CROSS-APPELLANT.

The sole question presented by the brief of appellants, Hammer and others, is whether or not in this particular case the three-year statute of limitations passed in reference to tax sales, or the ten-year statute of limitations in reference to all actions for lands, applies. If the three-year statute can be pleaded in bar in this case, then the appellants shall recover; but if that statute does not apply, and I contend that it does not, and this contention is backed up by a number of decisions of this court, then the ten-year statute only can be pleaded in bar.

I take it that it is unnecessary to undertake to go back through the realms of the entire tax title law of the state of Mississippi, and cite decisions for forty years back which apply to tax sales of some kind or character, but which are not in point, as did the learned counsel for appellants, and try to harmonize all of the decisions of the court in reference to tax titles, regardless of the principles involved in the different cases and the points

decided by the court in the various cases cited by counsel
for the appellants. There is but one question in this case
argued by him, and to that alone I will confine my ar-
gument in this brief.

The learned counsel very severely condemns the cases.
of *Kennedy* v. *Sanders,* 90 Miss. 524, 43 South. 913, *East-
land* v. *Lumber Co.,* 90 Miss. 330, 43 South. 956 and *Mc-
Lemore* v. *Anderson,* 92 Miss. 42, 43 South. 878, 47 South.
801, and claims that they are in direct conflict with the
case of *Jordan* v. *Bobbitt,* 91 Miss. 1, 45 South. 311, for
the reason, as given in his brief, that this court in the
three cases first above mentioned refused to apply the
bar as mentioned in section 539, Code of 1880, and section
2735, Code of 1892, but held in these cases that only the
ten-year statute of limitations could apply and bar the
complainant's right of recovery, and did apply the one-
year statute in the case of *Jordan* v. *Bobbitt,* 91 Miss. 1,
45 South. 311. These cases are vastly different. The
case of *Jordan* v. *Bobbitt, supra,* was a case over which
the probate court had exclusive jurisdiction over the ad-
ministration of the estate of A. I. Bobbitt, who died in
1861, as the estate was being administrated in that court
and the court had a right to make such orders as were
necessary, either for the sale of the property belonging
to the estate or for the preservation of the estate in any
manner necessary. While the order for the sale of the
property in that case appears to have been void, yet it
was a matter exclusively within the jurisdiction of the
court, and one in which the court could have rendered a
valid order for the sale of the property. If the order
under which the sale of the Bobbitt property was made
was void, and that fact had been ascertained before the
sale was made, the administrator could have applied to
the same court for another order in place of the void
order that had been rendered, and that same court could
have rendered a valid order, authorizing the sale of the
property. And the court was right in applying the one-

year statute of limitations when it was pleaded to the action in the Jordan case, for the reason that the thing that rendered the order void under which the property was sold was a mere irregularity in the court proceedings, and came within that class of cases to which the one-year statute of limitations was intended to apply.

In the case at bar no such irregularities existed, and the sale of 1892 for taxes stands as if no sale had been made whatever. The sale in March, 1892, for taxes of 1891, was made under what is commonly known as the "Madison Act," which is chapter 9 of the Laws of 1888, which act of the legislature undertook to and did classify and assess the lands of the state of Mississippi by dividing them into five classes, enumerating the counties which were placed by the legislature in the several classifications, and valued for the lands according to the notion of the legislature itself, and which act has been held unconstitutional in the cases of *Hawkins* v. *Mangum,* 78 Miss. 97, 28 South. 872, *Coffee* v. *Coleman,* 85 Miss. 14, 37 South. 499, and *Scarborough* v. *Elmer,* 87 Miss. 508, 40 South. 69. The assessment of 1889, under which the sale of 1892 was made, depended for its validity upon the Madison act, passed in 1888, and was therefore void, because the very foundation upon which the assessment rested was unconstitutional and void, and a sale under this assessment passed absolutely no title, and stands as if no sale was ever made.

In *Virden* v. *Bowers,* 55 Miss. 18, 19, it is held: "There are certain proceedings which lie at the foundation of the power to sell. There must be, first, a due assessment of the property; there must be default in the debtor in the payment of the taxes; and there must be in the hands of the collector the assessment roll, which is in the nature of a warrant to collect like an execution on a judgment. It may be said, if these things concur, the officer is armed with authority to proceed by sale if necessary." It is further said on page 20 of the same authority that, "as

already intimated, the essential things which create authority in the tax collector to collect the taxes by sale are legal assessment, that constitutes the owner of the property debtor to the state; and, second, a delivery of the assessment roll to the collector, that authorizes him to receive the money as therein charged against the property or persons; and, third, if default is made in payment on the day appointed by law, he has power to distrain and sell. . . . If, therefore, there has been a legal assessment, and the roll has been handed the sheriff for collecting, and he sells after default made by the tax debtor," etc., then the sale is good.

The court will readily see that, unless there is a valid assessment of the lands, the tax collector is not vested with power to make a sale at all, and, if there is no legal assessment of the lands, the tax collector cannot sell them; and surely where the act of the legislature under which the assessment roll was made, from which the sale was afterwards made, was unconstitutional and void, as in this case, then there was no legal assessment of the lands, which is absolutely necessary to a conveyance by a tax collector. It operates as if no assessment by the assessor had ever been made of the property; and surely, if there had been no assessment, there could have been no sale. And under this phase of the case nothing but the ten-year statute of limitations can possibly apply. And the court properly held, in *Kennedy* v. *Sanders,* *Eastland* v. *Lumber Co.,* and *McLemore* v. *Anderson* that the three-year statute did not apply, and nothing short of the ten-year statute could apply, where there was no valid assessment of the property prior to its sale by the tax collector.

At page 19 of chapter 6 of Laws of 1890, the legislature passed an act by which it undertook to cure defective tax sales. In the case of *Hawkins* v. *Mangum,* 78 Miss. 113, 28 South. 875, the court, speaking through Justice Calhoon, said: "The act of 1890 (Laws of 1890, p. 19)

had no sort of application to a case where there was no
assessment. It had and can have no reference to an as-
sessment absolutely void because of an unconstitutional
law''—which clearly shows that this court, in the con-
sideration of the sale of 1892, held the assessment on
which the sale was based had no validity whatever, and
was regarded and considered by the court as if no assess-
ment of the lands had been made.

If the legislature, the body passing the act of 1888,
could not subsequently pass an act which would legalize
and make valid an unconstitutional law passed by them,
how, then, can a three-year statute of limitations passed
especially to protect irregular tax sales operate to make
valid and legal a sale made under an unconstitutional
act? A statute cannot cure an unconstitutional act of
the legislature. *Hawkins* v. *Mangum, supra.*

Judge Terral, in rendering the decision of *Hoskins* v.
*I. C. Railroad Co.,* reported at page 768 of 78 Miss., page
518 of 29 South., and page 644 of 84 Am. St. Rep., and in
passing upon this particular section of the Code (2735
of the Code of 1892), said: ''Land entered under the
homestead law of the United States may not be sold for
taxes assessed before the time at which a right to a patent
is perfected. A sale before such time is absolutely void,
and cannot support, under section 2735, Code of 1892, a
claim of title by reason of three years' actual occupation
thereunder. Section 2735 applies to sales of land only
that are taxable and salable, and in which there is some
defect in the proceedings relating to the assessment or
sale. In such case, the owner, knowing his land to be
taxable, ought to be on his guard against their loss by
any negligence of his own. It applies to lands that are
taxable and which should have been assessed, and which
were assessed and sold, but the proceedings relating to
the assessment or sale are infected with some infirmity
of which the statute is to be the cure. It does not affect
fundamental rights, as a liability to taxation, a question

only of constitutional or legislative authority.  Could it
do so, the subordinate officers of government could defeat
the will of the sovereign power and accomplish by indi-
rection what the laws plainly forbid.  The learned judge
in *Patterson* v. *Durfey,* 68 Miss. 784, 9 South. 354, places
the reason for the statute upon the ground of 'neglect'
of the taxpayer, but there is no neglect where there is
no power in the authorities to assess the land for taxes.''

In this case there had been an assessment of the lands
in controversy and a sale by the tax collector, and the
court clearly considered the assessment as being abso-
lutely void; therefore no right could be conveyed under
a sale from this assessment. because the assessment was
illegal.  And the court further holds that no statute could
cure that illegal assessment.  This case bears out my con-
tention, and reaffirms the *Virden case* in 55 Miss. 18,
where it is held that one of the prerequisites to a tax
sale is a legal assessment; and where the act itself under
which the assessment is made is unconstitutional, no legal
assessment can be made, and, therefore, no statute of
limitations save the general statute of ten years can be
applied as a bar to a recovery.

The distinction between *Kennedy* v. *Sanders, Eastland*
v. *Lumber Co.,* and *McMahon* v. *Lumber Co.* is not in
conflict with *Jordan* v. *Bobbitt;* the principles of the two
classes of cases being very different.  The first three
cases above mentioned come from an illegal assessment,
and the very foundation and prerequisite to a tax sale
is a valid and legal assessment; and the other case, ema-
nating from a court of proper jurisdiction over the sub-
ject-matter, and which case is simply declaratory of the
office of the statute passed expressly to cure such irreg-
ularities as were had in the court proceedings, stand
widely apart in principle, and had no conflict in any point
decided in either case.  The court certainly had in mind
the case of *Jordan* v. *Bobbitt* in 91 Miss. 1, 45 South.
311, when it had under consideration the case of *McMa-*

*hon* v. *Yazoo Delta Lumber Co.,* decided in 92 Miss. 462, 43 South. 957, 46 South. 57. This case simply follows *Eastland* v. *Lumber Co.* and *Kennedy* v. *Sanders.* And if these cases had been overruled by *Jordan* v. *Bobbitt* in 91 Miss. 1, 45 South. 311, as counsel contends in his brief, they certainly would not have been followed by this court in *McMahon* v. *Lumber Co.,* in 92 Miss. 459, 43 South. 957, 46 South. 57, which would, according to his contention, necessarily reinstate the above cases and overrule *Jordan* v. *Bobbitt.*

I respectfully submit that there is no conflict between the authorities, as contended by counsel, and the cases of *Kennedy* v. *Sanders. Eastland* v. *Lumber Co., McLemore* v. *Anderson,* and *McMahon* v. *Lumber Co.* should be followed in this case.

In addition to what was said in the brief filed by cross-appellant, Yazoo Delta Lumber Company, in this case, in reference to that portion of the decree of the chancellor wherein he decreed that the defendants, Hamner and others, were entitled to recover from the complainant all of the taxes which have been paid on the land in controversy from 1892 up to the present time, including the amount paid by N. T. Burroughs at the tax sale of 1892, I respectfully submit that the defendants are not entitled to recover any taxes save those paid by them individually, first, because it is shown by the evidence in this case that N. T. Burroughs and the Burroughs Land & Trust Company sold and delivered large quantities of timber from the land in controversy, and therefore they are not entitled to recover from the defendants in this suit anything that was paid out by them as taxes on the land; second, because the tax sale of 1892 was absolutely void, there were no taxes due on the land, for the reason there was no valid assessment thereof, and where the land was not properly assessed, and there was no authority in the tax collector to sell, no taxes being due, then surely the land is not chargeable with any amount

that might have been paid for the property at the tax sale. Their right to recover these taxes and the amount of the purchase price paid at the tax sale is against the state and county, and not against the complainant or the land.

See *Day* v. *Smith,* 87 Miss. 395, 39 South. 526, where it is held that a purchaser at a tax sale does not have to pay illegal taxes assessed against the property before the title will pass to him under the sale for the legal taxes. See, also, *Moores* v. *Flurry,* 87 Miss. 707, 40 South. 226, where this court held that a lien could not be fixed on lands sold at a tax sale, where the sale for taxes was absolutely void.

In accordance with the brief heretofore filed, I respectfully submit that the answer of the defendants should be stricken from the file, and a decree rendered for the complainant, and the decree of the chancellor in reference to the taxes for which a lien on the land was fixed should be vacated.

### ASSIGNMENT OF ERRORS ON CROSS-APPEAL.

First. The court erred in setting aside the decree *pro confesso* rendered in October, 1909; no good cause having been shown.

Second. The court erred in overruling the motion of the complainant, filed at the December term, 1909, for a decree *pro confesso* against the defendants, which motion is supported by affidavit.

Third. The court erred in allowing the defendants thirty days in which to file an answer after the December term, 1909.

Fourth. The court erred in allowing the defendants to recover taxes paid on the land in controversy and in fixing the lien upon the land for the payment of the same.

### BRIEF OF CROSS-APPELLANTS.

The first, second, and third assignments of error by cross-appellants may be considered together; they charg-

ing in substance that the trial court erred in setting aside
the decree *pro confesso* rendered in October, 1909, and
overruling the motion of the complainant, filed at the De-
cember term, 1909, for a decree *pro confesso,* and in al-
lowing the defendants and appellants thirty days in which
to file an answer to the bill of complaint.

The court will see from the record that the bill of
complaint was filed on June 24, 1909. (See page 5 of
the record.) On June 26, 1909, personal service of pro-
cess was had on W. M. Hamner, R. V. Pollard, and T. R.
Henderson, and on June 28th personal service of pro-
cess was had on A. F. Gardner, the other defendant, all
of which is shown at page 6 of the record. The summons
further shows that the defendants were required to ap-
pear at the August rule day, to wit, the second Monday
in August, and answer the bill of complaint. This they
did not do; neither did they answer on the September
rule day. Afterwards, in October, a motion for a decree
*pro confesso* was filed, and the decree *pro confesso* was
rendered, as shown at pages 7 and 8 of the record. On
December 4, 1909, a motion was filed by R. B. Campbell,
solicitor for defendants, asking that the decree *pro con-
fesso* be set aside, which motion is shown at pages 12
and 13 of the record. Before this motion was ever passed
on by the court, the complainant filed a motion on De-
cember 14th, during the regular December term of the
chancery court, for a decree *pro confesso* to be taken in
term time. On the same day and with this motion, the
complainant by its attorney filed an affidavit in support
of the motion and for a decree *pro confesso,* asked for
by its motion filed on the said 14th day of December, at
the regular term of said court, in which affidavit all of
the facts are set out, and there are attached four letters
and copies of letters as a part of said affidavit, which
affidavit and exhibits are shown at pages 8 to 11 of
the record. This affidavit appears in the record as be-
ing in support of the motion for a decree *pro confesso*

filed in October, but it should follow the motion shown at page 11 of the record. The court overruled the motion for a decree *pro confesso,* and on the 17th day of December, 1909, during the same term of court, rendered a decree setting aside the decree *pro confesso* and giving the defendants thirty days in which to file an answer, which decree appears at page 13 of the record.

It is our contention that the court erred in allowing the defendants to file an answer and cross-bill, without they had first shown due diligence in filing or attempting to file an answer before the decree *pro confesso* was rendered in October. We further contend that at the December term, 1909, the complainant should have been allowed to take a decree *pro confesso,* and a final decree against the defendants, although the *pro confesso* taken in October might have been set aside, because in the motion of the defendants to set aside the *pro confesso* decree rendered and for time to answer they did not comply with the statute.

Section 600 of the Code of 1906 is as follows: "When the process shall be returned, executed or proof of publication made, the defendant shall plead, answer or demur on or before the first day of the term if the process be returnable to a regular term of the court; and if the process require the appearance of the defendant on a rule day in vacation, the defendant, shall plead, answer or demur on or before the monthly rule day next preceding that to which said process is returnable; if the defendant shall fail to plead, answer, or demur at the time required the complainant's bill may then at any time afterwards before plea, answer or demurrer is filed be taken as confessed against such defendants; a *pro confesso* so taken shall not be set aside without good cause shown. If the bill be taken for confessed against all the defendants, the complainant may set down the cause for hearing at once."

There was no cause shown on the part of the defendants, as required by the statute, why they should answer

at that time, or why they should be allowed further time to answer. They failed to tender with their motion an answer, and they failed to show why they did not tender such answer with their motion. Our supreme court has settled this question beyond any controversy. We find in the case of *Pittman* v. *McClellan et al.,* 55 Miss. 299, where Pittman was sued on a note for one thousand dollars and required to answer the bill of complaint on a rule day, failed to answer either at that time or the succeeding rule day, a decree *pro confesso* was rendered against him. He made a motion to set the same aside, and assigned as his reason for not answering the same that he was sick on each of the rule days at which he should have answered. The court in this case, 55 Miss., at page 305, in passing on this particular question, says: "Whenever a defendant seeks to be relieved from a *pro-confesso* or to amend his pleadings, he ought to exhibit with his application the answer or the amendment. If he does not, he ought to explain why he cannot do so and ask for further time. The statute expressly authorizes the court to grant further time on cause shown. Reading the several provisions of the statute together, they present this state of the law: If the defendant is in default, the complainant may take a *pro confesso.* Nevertheless the *pro confesso* shall be vacated for good cause, and the refusal so to do may be reviewed on appeal. But in the estimation of a court of chancery good cause has not been shown unless the answer is then presented, or unless satisfactory reasons are given why it is not then filed and further indulgence asked." This same rule is laid down in *Pattison* v. *Josselyn,* 43 Miss. 373.

We submit that under section 600 of the Code of 1906, quoted above, and the authorities above cited, the court erred in allowing the *pro confesso* decree to be set aside, and in not allowing complainants to take a decree at the regular December term, and in allowing the defendants to file an answer on the showing made by them.

Had the defendants exhibited their answer upon the presentation of their motion to set aside the *pro confesso* decree and for time to answer, the court would readily have seen by their answer and cross-bill, shown at pages 13 to 18 of the record, that they come squarely within the condemnation of this court in the following cases: *McMahon* v. *Yazoo Delta Lbr. Co.,* 92 Miss. 459, 43 South. 957, 46 South. 57; *Hawkins* v. *Mangum,* 78 Miss. 97, 28 South. 872; *Coffee* v. *Coleman,* 85 Miss. 14, 37 South. 499; *Scarborough* v. *Elmer,* 87 Miss. 508, 40 South. 69; *Kennedy* v. *Sanders,* 90 Miss. 524, 43 South. 913; Code 1906, section 3095.

It will be seen by reference to the answer of the defendants and the authorities above cited that these defendants rely upon the same defense made in the above-cited authorities, all of which have been condemned by this court.

We respectfully submit that this cause should be reversed on the cross-appeal, and a decree rendered striking the answer of the defendants from the file and granting a final decree to the complainants.

REJOINDER BRIEF OF T. C. KIMBROUGH, FOR APPELLEE AND CROSS-APPELLANT.

Since the argument in this case, counsel for appellants has filed an additional brief, based upon questions asked by the Chief Justice and Commissioner Whitfield. I desire in this brief to reply to so much of appellants' brief as I think necessary.

In his brief, counsel for appellants admits that the assessment of the lands in this controversy for the year 1889 was under the unconstitutional Madison act of 1888, and was void, and never ought to have been made as it was made. This court has decided in *Hawkins* v. *Mangum,* 78 Miss. 114, 28 South. 875: "This act (referring to the three-year statute) cannot cure an unconstitutional law. It cannot apply, even if it could then be efficacious, to an assessment which was no assessment at all." From

this it appears that this court unanimously decided that such an assessment was equivalent to "no assessment at all." In other words, what was done by the tax assessor had no more force and effect than if he had left the pages of his assessment roll blank.

Suppose then, the assessor, recognizing the unconstitutionality of the law of 1888, had left his assessment roll for the year 1889 a blank, and the board of supervisors, with this blank roll before them, had proceeded to make a tax levy for the year 1891, and the tax collector had proceeded to collect the taxes and to sell the delinquent lands under such assessment and tax levy, in March, 1892; would not the result, in contemplation of law, have been the same exactly as if nothing at all had been done by the board of supervisors and by the tax collector with reference to these matters during the years 1891 and 1892?

We must admit, if we are logical that the acts of the board and tax collector, under this situation, meant no more, in contemplation of law, than a blank. If the assessment roll was a blank, the acts of the board of supervisors and tax collector a blank, how could the three-year statute aid the appellee?

Three years' occupation after the redemption period, standing alone, cannot perfect title. It must be coupled with some act which has taken place beforehand, which act sets the statute in motion. This act, under the statute must be some sort of a tax sale; that is, a defective, irregular, or voidable tax sale. It must be an affirmative, potent act, or the three-year statute will not be set in motion. A nullity, a futile act, a farce, a blank, cannot set the statute in motion.

The tax collector was not clothed with any requisite necessary to a sale. He did not possess even a shadow of power or competency to make a sale. Then, surely, the court will not call a blank, a defective sale, an irregular sale, a voidable sale, a void sale or a sale.

The key to the whole matter is this: There must be some power in the tax authorities to act in the exercise of which power they may make a defective or irregular or voidable tax sale, and this power so used sets in motion the three-year statute of limitation, which becomes a bar upon the failure of any party in interest to exercise his right within the limitation period. This power, so exercised by the tax collector, communicates itself to the three-year statute and makes it efficacious, and, unless there is some power exercised by the tax collector, the three-year statute lies dormant and never becomes effective.

Clearly, under the contention of counsel for appellant, we have life growing out of that which is lifeless, efficaciousness growing out of inefficacy, and legal power out of illegality. To my mind, to admit the contention that the whole proceeding of the tax officers was a nullity, and then to say that this nullity is cured by the three-year statute of limitation, is, in effect, to say that the three-year statute of limitation gives a man title, irrespective of what may or may not have gone before, and puts it on the same footing with the ten-year statute of limitation —certainly a thing which the legislature never conceived of nor intended.

Argued orally by *Tim E. Cooper,* for appellant.

McLEAN, J., delivered the opinion of the court.

This is a suit brought by the Yazoo Delta Lumber Company in the chancery court of Sunflower county against the appellants for the purpose of removing clouds from complainant's title. The complainant alleges that it is the legal and equitable owner of the lands described in the bill, and further charges that the defendants are asserting some kind of claim or interest in and to the lands, that the claims of the said defendants are not valid, and that they have no title whatever to said lands, but

that the title and interest claimed by defendants operate as a cloud upon the title of complainant. The defendants answered, setting up, among other things, that they were the owners of the lands in controversy. They claim by virtue of a sale of the lands for taxes made on the 7th day of March, 1892, by the sheriff and tax collector of Sunflower county. Said lands were purchased by one N. T. Burroughs on said date and by *mesne* conveyances whatever title Burroughs acquired vested in the defendants. Defendants set up and claim the benefit of section 2735 of the Code of 1892, and section 539 of the Code of 1880, asserting that they were, and had been, in the occupation and adverse possession of the land for a period sufficient to bar complainant's cause of action. The cause was tried on bill, answer, and agreement. The agreement shows that complainant has good title to the land, unless the sale for the taxes herein named divested it of the title; that the defendants claim the land by virtue of a tax sale made by the sheriff and tax collector on March 7, 1892; that the sale for taxes was based on the assessment roll for 1889, which was made under the act of 1888 known as the "Madison Act" (Acts 1888, chapter 9), which assessment was void, and was in all respects regular and in accordance with the provisions of said act, and was made for the taxes of 1891; further, that the defendants and their vendors had been in such actual occupation and possession of said lands for the space of three years after the expiration of two years from the date of said sale thereof for taxes; and that said N. T. Burroughs entered upon said lands and held the possession and occupancy for five years continuously, claiming title thereto by virtue of said tax collector's deed, etc. In other words, the sole and single question presented by this record is whether the tax sale made in 1892, based on the assessment roll of 1889, which was made under the act of 1888 known as the "Madison Act;" which has been declared by this court unconstitutional

and void, followed by actual occupation and possession for the period prescribed, conferred upon the purchaser at the tax sale a valid title.

The question involved is one of great interest and magnitude, and we have given to it the examination and investigation which its importance demands. The question, if one of original impression, would not be difficult of solution, but the difficulty lies solely in the fact that this court, in *Kennedy* v. *Sanders,* 90 Miss. 524, 43 South. 913, *Eastland* v. *Lumber Co.,* 90 Miss. 330, 43 South. 956, and *McLemore* v. *Anderson,* 92 Miss. 42, 43 South. 878, 47 South. 801, decided this question, wherein it was held that the statute under consideration has no application where the sale for taxes is absolutely void; that it was never the intention of the legislature to breathe the breath of life into something that never had any life at all in it. The attorneys for both the appellants and the appellee have presented their respective sides ably and forcibly, and in order that the benefit of these arguments can be had, as well as to shorten this opinion and relieve us of a great deal of labor in taking up and considering *seriatim* the numerous points on tax titles heretofore decided by this court, the reporter will copy the briefs for both appellants and appellee in full.

The evil which lies at the very root of the opinions, above named, delivered by this court, declaring that the statute under consideration has no application to the sales of lands for taxes where the assessment was absolutely void, is, first, in failing to place the statute in that category to which it justly belongs; and, second in the omission of the vitalizing and life-infusing element of possession of the lands under the tax proceedings. The statute is a statute of limitation. We find this section in the chapter on limitations in the Code of 1892, placed there by the legislature which enacted the statute and which adopted the Code. In addition, this statute shows upon its very forefront, and in all of its parts,

that it is nothing more or less than a statute of limitation. It is as much a statute of limitation as the general one, which prescribes that actions concerning land shall be brought within ten years, or that an action for assault and battery shall be commenced within one year, and so on, as to the other various causes of action. There is nothing in this statute which distinguishes it from any other statute of limitation. It simply provides a period of time within which actions may be brought to recover any lands sold for taxes; the right to successfully defend being confined to only those who have been in the possession of the land for the prescribed period; the essential, vital instrumentality, which gives the perfect, unassailable title, being not a sale for taxes, but possession under the deed. The possession, or occupancy, of the land is the principal, and the tax deed merely the incident. In other words, the tax deed is the color of title; the possession confers the actual, real title or ownership.

We find this illustrated in the various opinions of this court construing the ten-year statute relative to actions concerning lands. In *Jones* v. *Brandon,* 59 Miss. 585, this court says in the most emphatic language that the adverse possession confers title; possession of the land alone gives ownership, regardless of any claim under any paper title. This principle extends even to instances where the possessor claimed the land under a mistake. *Metcalfe* v. *McCutchen,* 60 Miss. 149. We accentuate that the possession is what confers ownership under our general statute of limitations; in fact, the paper title, or color of title, does not augment or enlarge the claim of ownership, the ownership being referred alone to the possession. Under this ten-year statute it is the adverse possession that confers title or ownership. The same is true as to the statute under consideration. The possession, based upon the claim that the land was purchased at a sale for taxes, confers title and ownership. When the real owner, one who has the true paper title, finds another in the possession of the land, and when this pos-

sessor is brought into court, the law says to him, "By what right do you claim this land?" He says, "By reason of adverse possession." The law says, "Produce your title." He replies, "I have no deed or other muniment of title." Then the law rejoins, "You must establish possession for full ten years." But if he claims possession under a tax title, the only requirement is that he prove possession for three years, fortifying the possession by his tax deed. If he claims under a void sale from the chancery court under section 2693, Code of 1880, he must simply introduce his court deed and couple with it evidence of two years' adverse possession. The statute under consideration, section 539, Code 1880, is: "Actual occupation for three years of any land held under a conveyance by a tax collector." It is manifest that the actual occupation confers ownership, and that the tax deed is the mere color of title to which occupation is referred. It is not questioned as to the power of the legislature to make this law; indeed, its constitutionality is conceded.

Statutes of limitations are statutes of repose, and by all the courts, both ancient and modern, must be construed liberally in furtherance of the end sought to be obtained. The courts have no right to add anything to or take anything from a statute, where the language is plain and unambiguous. To do so would be intrenching upon the power of the legislature. Neither have the courts authority to write into the statute something which the legislature did not itself write therein, nor can they ingraft upon it any exception not done by the lawmaking department of the government. Whenever the judiciary shall undertake to violate these rules—indeed, we may say maxims—then it is guilty of usurpation in its most obnoxious form; and the courts dare not do this lest they destroy their own usefulness and power.

A statute which is plain and unambiguous, clear and free from doubt, is its own interpreter, and in such cases

it is not necessary to resort to any rule of construction in order to ascertain its meaning. It is not for the judiciary to determine the wisdom, but simply to enforce the statute as it is written, and leave the responsibility where it justly belongs—upon its creator, the legislature. All of these principles are but hornbook law, known and familiar to all who are mere infants in the school of law and in its primary and academic departments. When there is doubt or obscurity in a statute, one of the cardinal rules of construction is to ascertain the conditions of affairs at the time of its enactment, the evil to be avoided, and the necessary effect produced by the statute.

Turning now to the statute itself, the language of section 539, Code of 1880, is as follows: "Actual occupation for three years, after one year from the day of sale, of any land held under a conveyance by a tax collector, in pursuance of a sale for taxes, shall bar any suit to recover such land or assail such title because of any defect in the sale of such land for taxes, or in any precedent step to said sale, saving to minors and persons of unsound mind the right to bring any such suit within such time, after the removal of their disabilities, and upon such terms as is provided for the redemption of land by such persons." Mark the language: "Actual occupation . . . shall bar any suit to recover such land or assail such title because of any defect in the sale of such land for taxes, or in any precedent step to said sale." This statute was brought forward in Code of 1892, section 2735, and is the same, except that it is two years from the day of sale, instead of one year from the day of sale, as specified in the Code of 1880. Is there anything about the statute which is doubtful or obscure? Can human language be plainer? Can human thought be expressed in more unequivocal and clearer terms? Is there lurking beneath this language any hidden meaning? Is there ambushed beneath its phrase-

ology any concealed thought? It is as clear as a sun-beam, and its broad and sweeping provisions are as full and as all-embracing as the circumambient heavens, and as forceful and majestic as an army with banners. If the legislature intended to exclude any sale or any precedent step from its broad and comprehensive embrace, why did it not say so? If it intended to exclude a sale that was void, why did it fail to omit so vital an exception? In order to exclude any sale, void, voidable, or irregular, it is absolutely necessary to convict the legislature of the veriest folly. This court in several opinions (reference to which are found in appellants' brief) construed section 539, Code 1880, and other similar statutes, before this section was re-enacted and brought forward as section 2735, Code 1892.

The law is well settled, without one discordant note, that when the highest court in the state construes a statute of that state, the construction so placed thereon becomes as much a part and parcel of the statute as if specifically incorporated therein, and that when the legislature re-enacts the statute it adopts the construction so made by the courts. This is a rule of such universal application that the citation of authorities is unnecessary to support it. It therefore necessarily follows that, when the legislature of 1892 brought forward into the Code of 1892 this former statute, it adopted the statute with the construction which had been given it by this court. The legislature of 1906 amended this section, 2735, Code 1892, by adding to it: "This section shall not apply where the sale is absolutely void and not merely irregular" (Code 1906, section 3095), thereby completely emasculating this statute, as irregularities are cured by section 4332, Code 1906. However, this amendment evidently evinces the purpose of the legislature to effect a change in the statute, and not to declare the meaning of the former statute, except this amendment was a recognition that the former statute was susceptible of construction including sales absolutely void.

Turning to the wisdom of the act, and at the same time tracing in its chronological history, its development, let us look at the condition of affairs at the time when this act was born and brought into being, the evil that then existed, and the remedy sought to be applied to the conditions then existing. The causes that gave birth to the condition of things arose mainly during the reconstruction period—a period when there was no order in politics and no consistency in statesmanship; a time when incompetency was paramount in almost every department of the state government. The members of the board of supervisors, whose duty it was to approve the assessment rolls, to make the levy for taxes, and who acted as the sole financial officers of their respective counties; the assessor of taxes, who compiled the rolls; the tax collector, in whose hands was placed the machinery for enforcing the collection of taxes by sale and otherwise; the members of the various levee boards throughout the state, whose duty it became to levy and collect taxes—were as a rule ignorant and incompetent, and then to this incompetency was united the spirit of extravagance, loot, and plunder. The results of this were, first, that invalidity crept into almost all sales for the collection of taxes. No one had any confidence at all in tax titles. A tax title was regarded, generally, as no title at all, and conferred upon its possessor nothing "in the heavens above, or in the earth beneath, or in the waters under the earth;" and the corollary necessarily was that the state and the various levee boards became the owners of vast and immense portions of the lands throughout the entire state, thus withdrawing these lands from taxation, and thereby leaving the state with inadequate means with which to defray its expenses in running the governmental machine. This, in turn, caused excessive levies upon the property remaining in the hands of individual owners. Such was the condition of affairs when the Constitution was adopted in 1869, and

the provision for the first time inserted in the organic law of the state, to wit: "The legislature at its first session shall provide by law for the sale of all delinquent tax lands. The courts shall apply the same liberal principles in favor of such titles as in sale by execution."

The legislature which convened shortly after the adoption of this Constitution, which was in 1871, inserted into the Code of that year section 1709, which provides as follows: "No suit shall be commenced in any court of this state to invalidate any tax titles to lands after three years from the time said land was sold for taxes, and no titles now held to any land heretofore sold for taxes, after the time for redeeming the same has expired, shall be invalidated in any court of this state, except for the reasons specifically set forth in this article." This provision was so radical in its terms that grave doubt at once arose in the minds of members of the bar as to the constitutionality of the act, as it undertook to validate, by a short period of limitations, all sales, regardless of whether made before or after the enactment of the law, and regardless of whether the purchaser of the title went into possession of any of the land, claiming under a confessedly void title. Shortly after this the court, in *Dingey* v. *Paxton*, 60 Miss. 1038, held that, because the statute was retroactive in its operation, it was unconstitutional and void, using this language on page 1057: "It is sufficient for the present for us to say that the act under consideration, in so far as it attempts to validate a tax title which was void under the law as it existed at the time of its enactment, is violative of our Constitution and void. The legislature may declare what the law shall be for the future; in some cases it may declare what the law has been for the past; but when the effect of such legislation is to transfer property without the assent of the owner, and vest it in another, it offends, not only against natural justice, but against that clause in our Constitution by which the citizen is protected against loss of property except by due process of law."

It was argued against the act of 1871 that the legisla-
ture by that section undertook to transfer the owner-
ship of property by mere paper title, regardless of the
possession of the property, and in support of this prin-
ciple this court, in *Dingey* v. *Paxton, supra,* says: "The
power of the legislature to prescribe within what reason-
able time one having a mere right of action shall pro-
ceed is unquestionable; but there is a wide distinction
between that legislation which requires one having a mere
right to sue to pursue the right speedily, and that which
creates the necessity for suit by converting an estate in
possession into a mere right of action and then limits
the time, in which the suit may be brought. The mere
designation of such an act of limitation does not make
it such, for it is in its nature more than that. Its opera-
tion is first to divest from the owner the constructive
possession of his property and to invest it in another,
and in favor of the possession thus transferred to put
in operation a statute of limitations for its ultimate and
complete protection. A complete title to land, accord-
ing to Blackstone, consists of *juris et seisinae conjunctio;*
the possession, the right of possession, and the right of
property. One who is in the actual or constructive pos-
session of his lands, and who has the right of possession
of the property, needs no action to enforce his rights.
He is already in the enjoyment of all that the law can
give him, and cannot be disturbed in such enjoyment,
except by 'due course of law.' If possession and the
right of possession and the right of property are each an
element of title, by what right can the legislature divest
the one, if it is prohibited by the Constitution with inter-
fering with the other?"

Such is undoubtedly the law, and has been repeatedly
announced by other courts. Cooley's Constitutional Lim-
itations (7th Ed.), pp. 522, 523. This principle was fore-
shadowed by the members of the bar when considering
the validity of section 1709, Code of 1871, and when the

legislature of 1876, which was composed of the best legal talent in this state (all who are familiar with the political history of this state know that in 1875 the ablest and best men in the state left their law and other business and became candidates for state and county offices, solely to redeem the state from the horde of vandals which were then fattening upon its vitals), recognized the invalidity in part of this section 1709, and desiring to put in force a law that would secure confidence in tax titles and that would induce the individuals to purchase lands, and thus again place those lands as governmental revenue producers, enacted section 44 of the act of 1876 (Acts 1876, chapter 104), which gave any purchaser at a tax sale, or to the state, or to the vendee of the state, the action of unlawful detainer against any person in possession of the lands so purchased, with a proviso that said action of unlawful detainer must be brought within twelve months after the date of such sale, and provided, further, that "twelve months after the final recovery of any judgment in any such action, such judgment shall be a bar to any action possessory or to test the title to such land brought by any person whatsoever, and shall be conclusive evidence of the right of possession and title in such person or state or their vendees," thus in every respect complying with the "due process" clause of the Constitution. Still again, in furtherance of the plan suggested, section 539 of the Code of 1880 was adopted, and this section 539, was brought forward in the Code of 1892.

We have thus traced the history and development of this statute in order to ascertain the intention of the legislature from the conditions then existing and the remedy sought to be applied, regardless of the plain and positive provisions of the statute, and we have thus seen that the purpose was to afford security to the owner of tax titles, free from and against the assailment of any and all causes whatsoever. The wisdom of the legisla-

ture cannot be questioned, not only because it was neces-
sary that the lands should be made revenue producing,
but every interest demanded that uncertainty as to titles
should cease.    This state, especially then, was almost
strictly an agricultural section.   From her breast the in-
habitants drew principally all of their sustenance and liv-
ing.    These lands were largely unproductive and unde-
veloped; the primeval forest still slept undisturbed by
the plowman's song; the great Yazoo and Mississippi
Delta country, holding within its bosom the fertility of
the Nile, was almost a *terra incognito,* and the interests
of the state and her people imperatively demanded that
these lands should be cleared, put in cultivation, and
their wonderful resources developed; and there was but
one way by which that could be done, and that was to
afford protection to those who would invest their money
and means in these lands, and the state, acting through
her legal and constitutional authorities, enacted the stat-
ute under consideration.    We have deemed it unneces-
sary to refer to the various and numerous legislative
enactments curing and attempting to cure defects in tax
titles.    So to do would prolong this opinion to an unrea-
sonable length.    However, we might refer to the abate-
ment act of 1874 (Acts 1874, ch. 33), whereby the legis-
lature, recognizing that so much of the lands had been
forfeited for taxes and thereby had become non-pro-
ductive to the state, abated all the taxes prior to the year
1874.   The manifest object of this legislation was to place
these lands back upon a revenue-producing basis for the
state.

The argument of the court assailing the validity of the
void tax sale is this: A sale, in order to be valid, must
be predicated upon a valid assessment; if the assessment
is void, then in the eye of the law there is no sale.    This
is a species of legal reasoning which is seemingly unan-
swerable, but the prescience of the legislature coming to
its aid. and the legislature recognizing that a sale made

under a void assessment is void, and at the same time knowing that such sales were common, undertook under its constitutional power to validate, by a statute of limitations, these confessedly void sales, and as the instrumentality of such purpose made the occupancy of the lands the evidence of ownership, referring the title or ownership, not to the unconstitutional and therefore void proceeding, but to the occupancy of the land held under those tax proceedings. If such be not the intention of the legislature, then such legislation is absolutely nugatory.

From the foregoing it is unnecessary to take up and discuss the several authorities relied upon by appellee, which unquestionably settle the doctrine that, in order to confer title upon the purchaser at a tax sale, there must be a valid assessment, and this is true, even where the legislature undertakes to cure the validity of the sale by prescribing a period of time within which the owner has a right to contest the invalidities of the proceeding. We fully concur in all of these rulings, but the stumbling stone at which appellee stumbles is that such is not the purpose as expressed in section 539, *supra,* but the purpose and intent, as already explained, is to confer ownership by reason of the occupancy of the land—a perfectly constitutional plan or method.

*Hawkins* v. *Mangum,* 78 Miss. 97, 28 South. 872, does not touch the question at bar—side, edge, or bottom. The only thing that was decided, or even presented for adjudication, by the court in that case, was first, the validity of the act of 1888 providing for the assessment of land, and, second, what effect, if any, acts of 1890, p. 19, had upon this assessment. The court first decided that the act of 1888 was unconstitutional (in which we fully concur), and in the opinion on the suggestion of error the court says, on page 113 of 78 Miss., page 875 of 28 South., that: ''The act of 1890 (Acts 1890, p. 19) has no sort of application to a case where there was no

assessment. It has and can have no reference to an assessment absolutely void because of an unconstitutional law.'' The court was here referring to the act of 1890, which authorized an equalization of assessments (the assessments made under the act of 1888 being then in use in the state), and, of course, had no right to validate or to cure an absolutely void assessment, void because in conflict with the Constitution. In this case (*Hawkins* v. *Mangum*) the question as to what effect the statute of limitations would .have where the purchaser at a tax sale had been in possession, claiming under a void or voidable deed, could not possibly have arisen.

The principle which is announced in the case now before us is not at all at variance with the principle laid down in *Virden* v. *Bowers,* 55 Miss. 1, *Davis* v. *Vanarsdale,* 59 Miss. 367, and numerous other cases decided by this court, extending to and including *Reed* v. *Heard,* 53 South. 400, wherein it is said that a sale for taxes, in order to be valid, must be upon a valid assessment; that generally a statute that cured or attempted to cure an invalid sale for taxes is predicated upon and presupposed a valid assessment. We again announce our full concurrence in this line of cases, but the courts in these authorities were treating of and construing statutes entirely different from the one now under consideration, and were applying those statutes to an entirely different state of facts from the one shown in this record. The statutes treated of in those cases were section 4332, Code 1906 (a rescript of section 3817, Code of 1902), and section 525, Code 1880, and other .similar statutes, where the legislature prescribed the time within which a suit should be brought to invalidate a tax title, without any reference whatever to a case where the owner of the tax title had actually gone into possession of the land under the tax deed, and had held the land for the prescribed period; the all-important, vital, and distinguishing difference being between where the purchaser of the tax title had

taken actual possession of the land and where the owner of the original title remained in possession. He who is in possession can never be injured by the flow of time, and he who is out of possession can never be benefited by it.

Cooley on Taxation (3d Ed.), p. 1068, in discussing the power of the legislature to provide a short period of limitation within which a bad title may ripen into a good one either in spirit, in purpose, or in effect, says it is an act in the nature of an act of limitation; and he discusses three different classes of cases which may be affected by such statutes: (1) Where the owner of the original title remains in possession; (2) where the land is and remains afterwards unoccupied; (3) where the tax purchaser enters and holds possession, claiming title under a tax sale. In the third class of cases he says that by the adverse possession he, the owner of the original title, is excluded from the enjoyment of any right he may claim, and public policy, no less than justice to the tax purchaser, requires that he should bring his suit within a reasonable time in order that all contested questions may be settled; that it cannot be said that five years, or even two years, are not a reasonable time for the institution of such a suit. See the numerous authorities cited in note 1, page 1068. The authorities seem uniform that such statutes, when the time is not unreasonably short, are founded in sound policy, and Mr. Cooley, in this same work (pages 1068 to 1902, inclusive), discusses *in extenso* the rulings of the various courts upon statutes curing defective tax sales. An analytical examination of the text, together with the cases cited, will disclose that the principle announced in the instant case is in accord with the authorities of other states upon a statute like the statute under consideration; this statute being that occupation of the land for a prescribed period bars the owner of the original title from showing defects in the tax sale. The casual reader is apt to be confused, and perhaps misled, by that line of

cases, cited by this author, holding that, where the tax deed or proceeding is void, the purchaser of the tax title cannot claim the benefit of the statute of limitations, although he has been in possession of the land. These cases are predicated upon the proposition that, in order for a party to be in adverse possession of the land, he must not only be in possession but must be in possession under color of title. But these authorities hold that a void deed, whether void on its face or otherwise, is not color of title.

The authorities which so hold are not in accord with the repeated rulings of this court and with the well-established rule in this state, extending as far back as *Hanna* v. *Renfro*, 32 Miss. 125, decided in 1856, and *Root* v. *McFerrin*, 37 Miss. 17, 75 Am. Dec. 49, wherein it is held that a void tax deed is color of title. In some states it is held that a tax deed must be recorded in order to constitute color of title. The great weight of authority is in full accord with this court, to the effect that an instrument void on its face may, notwithstanding, be good as color of title on which to found a claim of title by adverse possession. Cooley on Taxation (3d Ed.), vol. 2, p. 1091, and authorities cited in note 2. But even in those states where, in order to constitute adverse possession, the party must have entered in under color of title, it is held that, where the tax deed is made *prima facie* evidence of title, it is plain that it gives color of title, and the decisions are that seven years' possession, or any other possession for the time required by the statute, was sufficient with such conveyance. Cooley on Constitutional Limitations (3d Ed.), p. 1090, and authorities cited in note 1.

A case on all fours with the instant case is that of *Oconto Co.* v. *Jerrard et al.*, 46 Wis. 317, 50 N. W. 591, and by reason of the fact that it is identical with the instant case we quote freely from it. This was an action of ejectment. Defendant claimed under a tax deed, re-

corded August 8, 1874. For three years after the recording of the tax deed, the actual possession of the land was in possession of the defendant. The owner of the original title claimed that there had not been a valid assessment, and that consequently the limitations prescribed by the statute could not be invoked by the defendant. The court concedes in that case there was no valid assessment; in fact, it says: ''There is no pretense that the tax for which the deed here was issued proceeded upon a regular, fair, and equal assessment of the property to be taxed, made by the officers in the manner and with the securities and solemnities provided by statute, and in such case it has been said there is no tax.'' The court then (46 Wis. 325, 50 N. W. 591) proceeds to discuss the rights of the parties claiming under it against the tax deed, void or voidable, and holds that, where the grantee in a tax deed has been in possession under it for three years next succeeding the record thereof, the deed cannot be impeached on the ground that the tax was invalid for want of a valid assessment under the previous decisions of the Wisconsin court. In discussing this question this court says: '' 'Interest reipublicae ut sit finis litium.' It is therefore the policy of the law that some reasonable lapse of time should end all controversies. All unchallenged possession under color and claim of title, however, defective, should ripen in time into title unchalleneged. This is the philosophy of statutes of limitation. They are therefore called 'statutes of repose.' They give possession— rest from litigation. When they have run, they bar forever all previous rights against the title which they protect—silence forever all objections against and all criticisms upon it. Claims which would have prevailed over it before become extinct. The defects which would have been fatal to it before are cured. Whatever could have been heard to impeach it before can be heard no more forever. So it is here. The respondents had their day to impeach the tax proceeding and to avoid the tax deed.

Then they might have said that the groundwork was so defective that there was no tax, and that the deed was therefore no tax deed. This they did not then do, and they are now too late to do it. They suffered the statute to purge the tax proceeding of all defects to raise the tax above impeachment. Their objections may be well founded. But they come out of time. What the respondents might have said, they cannot now say. The statute has left them like one estopped to speak the truth, because they did not speak it when they might. This has been the construction uniformly given by this court to the statute of limitations in relation to tax deeds. It has been uniformly held, in a multitude of cases, that as against the grantee of a tax deed the statute puts at rest all objections against the validity of the tax proceeding, whether resting on mere irregularity or going to the groundwork of the tax. The statute makes a deed valid on its face *prima facie* evidence, as soon as executed, of the regularity of all the proceedings from the assessment of the land, inclusive, to the execution of the deed. And the effect of all the decisions is that, when a statute has run in favor of a grantee, the deed becomes conclusive to the same extent"—referring to *Edgerton* v. *Bird,* 6 Wis. 527, 70 Am. Dec. 473, and the cases collected in the noting of *Vilas & Bryant; Lawrence* v. *Kenney,* 32 Wis. 289; *Wood* v. *Meyer,* 36 Wis. 308.

In that case the counsel for the plaintiff contended that, to bring a tax deed within the statute, the validity of the tax and of the sale must be established. The court, responding to this argument, says (36 Wis. 327): "Such a construction would go far to make the statute a dead letter. The statute was designed to protect things *de facto,* not things *de jure.* When there has been an actual attempt, however defective in detail, to carry out a proper exercise of the taxing power, the statute applies. After the statute has run, the tax deed itself conclusively establishes the validity of the tax and of the sale"—referring

to quite a number of authorities. This principle was subsequently affirmed by the Supreme Court of the United States in *Bardon* v. *Land & River Improvement Co.,* 157 U. S. 327, 15 Sup. Ct. 650, 39 L. Ed. 719, *et seq.*

In *Pugh* v. *Youngblood,* 69 Ala. 298, Brickell, C. J., speaking for the entire court says: "The probate of the deed is made *prima facie* evidence of the facts recited in it, in all controversies relative to the land conveyed. This is the value of the deed as evidence before the expiration of the period of limitations to actions for the recovery of the lands. When that period has expired, and if there has been open, continuous possession with a claim of title, however erroneous may be the recitals of the deed, . . . whatever may be the variances between its statements as to the years for which the taxes were assessed, and the assessment itself, or whatever may be the irregularities attending the sale, the statute operates a bar to the action and was intended to foreclose all inquiry into the regularity of the sale." The court further says, on page 299, that: "The possession taken and held under the deed was adverse, and, if continued for the period prescribed by the statute of limitation, would not only bar the entry of the true owner, but ripen into an indefeasible title." Numerous other authorities to the same effect can be cited, most all of which will be found collected to notes to Cooley on Taxation, above cited.

We may with profit briefly consider the construction and effect which this court placed upon a statute in *pari materia* with the statute under consideration. In the Codes of 1871, 1880, 1892, and 1906 there is a statute which prescribes a short period of time within which the owner of the original title has to recover his lands sold under the order of the chancery court. A judgment or a decree of the court without jurisdiction is void, absolutely and irretrievably void, so null that it can be assailed anywhere and in any action, that it will not stand against even a collateral attack. In *Morgan* v. *Hazle-*

*hurst Lodge,* 53 Miss. 665, *Hall* v. *Wells,* 54 Miss. 289,
*Summers* v. *Brady,* 56 Miss. 10, *Bradley* v. *Villere,* 66
Miss. 399, 6 South. 208, and *Jordan* v. *Bobbitt,* 91 Miss.
1, 45 South. 311, this court maintained and enforced the
legality and effectiveness of the statute in cases where
the proceedings to condemn the land were void. These
cases are in line and fully sustain the principle we an-
nounce in the instant case, and are unalterably opposed
to the opinion of this court in *Kennedy* v. *Sanders,* 90
Miss 524, 43 South. 913, *Eastland* v. *Lumber Co.,* 90 Miss.
330, 43 South. 956, and *McLemore* v. *Anderson,* 92 Miss.
42, 43 South. 878, 47 South. 801. If the legislature in-
tended, by the statute relating to invalid court proceed-
ings, to cure sales that were constitutionally defective, it
also can be said to intend, under an equal, specific, and
comprehensive statute, to validate tax sales or tax pro-
ceedings, which are also void by reason of an invalid
assessment. The assessment and levy of taxes are but
the judgment condemning the land for liability for the
taxes.

This court, in *Jordan* v. *Bobbitt, supra,* in construing
the statute relative to invalid sales made under court
proceedings, and quoting from the opinion of Judge Sim-
rall in *Morgan* v. *Hazlehurst Lodge,* 53 Miss. 682, says:
"The statute is remedial and curative, has its origin in
that policy, and if the words will admit it, should receive
that construction which will accomplish the end aimed
at. It was meant to cure all defects in the sale, no mat-
ter from what cause, whether before or after decree, un-
less the heir brought his action within the time to con-
test and show its validity. Though the sale be void, he is
under color and claim of title, and the statute does no
more than protect and perfect his imperfect right, after
the expiration of a year from the time the right to bring
the suit arose."

In *Hall* v. *Wells,* 54 Miss. 297, Judge Campbell, deliv-
ering the opinion of the court, after reaffirming the views

of the court, as announced in *Morgan* v. *Hazlehurst Lodge,* says: "The statute originated in the known fact that a very large proportion of the sales of property by virtue of the orders of probate courts was void, from various causes; and, as insecurity of titles to property is a great public evil, it was determined to provide a short statute of limitations, applicable to all cases falling within the existing evil; and the section under review contains the provision to remedy it, not by relating back and validating proceedings, but by requiring all actions to recover any property before that sold by any administrator, executor, or guardian, by virtue of the order of any probate court, on the ground of the invalidity of such sale. . . . This section applies to all sales of the class mentioned which are invalid, no matter on what ground. Any sale which is included in the evil intended to be remedied is embraced."

This court again, in *Jordan* v. *Bobbitt, supra,* quoting from the opinion of Judge Cooley, delivered in *Toll* v. *Wright,* 37 Mich. 93, in construing a statute similar, and in sustaining the view of this court, says, on page 101: "What, then, is the meaning of the statute when it speaks of sales by an executor or administrator under the provisions of this chapter? It certainly does not mean valid sales, for those need no protection. Neither can it mean sales lawfully ordered, for it makes no mention of any order, and speaks of sales only. Neither can it mean sales in which the statute has in all important particulars been followed, for the manifest purpose is to make an undisputed possession cure defects in the proceedings. Indeed, it cannot possibly, as we conceive, mean more than this: A sale purporting to be made under the provisions of the chapter, and in pursuance of an order confessedly based upon them. If the administrator with such an order has made sale under the provisions of this chapter, and given a deed under which the necessary possession has been had, we think the case is fairly within

the intent of the statute. . . . Statutes of limitation are statutes of repose, and we should seek, in construing them, to give them the operation intended. We must not defeat them by a strictness of construction it was never designed they should be subjected to. Let it be conceded that the administrator's sale was at the time void; the fact remains that the court assumed to order it under the provisions of this statute, and the administrator has followed its provisions in making the sale. It is consequently a sale 'pursuant to the provisions' of the statute, in the sense in which we understand the legislature to have employed these terms. But it is denied by the defendant that the legislature has power to validate a void sale. This is not what is attempted here, as we think. The statute is intended as a statute of limitation in the proper sense.'' It is needless to say that this opinion does not conflict with *Hoskins* v. *I. C. R. R. Co.*, 78 Miss. 768, 29 South. 518, 84 Am. St. Rep. 644, for the reason, given in that opinion, that the legislature could not, in the nature of things, have intended to include property which was not subject to assessment for taxes.

In order that there may be no doubt as to what we hold, we summarize our holdings as follows: First. Under section 3817, Code of 1892 (section 525, Code 1880), the owner of the original title, at any time after two years from the date of sale and before actual occupation for three years, can show the invalidity of the tax deed by establishing either one of the invalidities specified in section 3817, supra, and in addition thereto a void assessment or any other constitutional defect. Second, Under section 2735 of the Code of 1892 (section 539 of the Code of 1880), actual occupation for three years after two years from the day of sale is an absolute bar to the original owner to set up any defense, or to test the right of the occupant claiming under the tax conveyance.

A sufficient apology for this somewhat lengthy opinion is the importance of the question involved, and, perhaps,

the vast interests it may affect throughout the state. It is with much reluctance we overrule former opinions of this court, but our convictions are so strong as to constrain us to do so, and *Kennedy* v. *Sanders, Eastland* v. *Lumber Co.*, and *McLemore* v. *Anderson, supra,* are overruled, in so far as they conflict with this opinion.

*Reversed, and bill dismissed.*